COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-239-CR
 
  
COREY 
BISHOP                                                                     APPELLANT
  
V.
  
THE 
STATE OF TEXAS                                                                  STATE
 
  
------------
 
FROM 
THE 371ST DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
 
I. Introduction
        Following 
a bench trial, the trial court found Appellant Corey Bishop guilty of aggravated 
assault with a deadly weapon and sentenced him to ten years’ 
confinement.  In three points, Bishop complains that the evidence is 
legally and factually insufficient to support his conviction and that his trial 
counsel was ineffective.  We will affirm.
II. Factual 
Background
        Bishop 
is married to Tonja Haywood. Tonja and Bishop have one daughter, Cora.  At 
the time of the incident, Tonja and Cora resided with Crystal Haywood, Tonja’s 
sister.
        On 
July 25, 2003, Crystal, Tonja, Cora, and Aaron Dudley, Crystal’s boyfriend, 
were in Crystal’s second floor apartment.  Sometime in the mid-afternoon, 
Bishop arrived at the apartment and knocked on the front door.  Tonja 
answered, she and Bishop walked downstairs, and Tonja informed Bishop that her 
mother thought Cora needed new shoes.  Bishop asked for the cordless phone 
that Tonja was holding, and he called Tonja’s mother.  Tonja grabbed the 
phone away from Bishop and hung up when she determined that Bishop had called 
her mother.  Shortly thereafter, Bishop and Cora returned upstairs to 
Crystal’s apartment.
        As 
Bishop sat down in the front room, Dudley, who had been with Crystal in her 
bedroom, left to go to a convenience store.  Crystal then asked Bishop if 
he had called her mother and hung up on her. Bishop responded by saying that her 
mother needed to “stay out of [his] business.”  Tensions escalated as 
Crystal and Bishop continued their conversation, and Bishop approached Crystal 
and struck her in the face with an open hand. Crystal then retreated to her 
bathroom and locked the door.  Bishop followed and kicked the bathroom door 
until it opened.  Crystal ran out of another bathroom door, exited the 
apartment, and met Dudley, who was returning from the store, by the 
stairs.  Crystal, who appeared upset, told Dudley that Bishop had hit her. 
Immediately thereafter, Bishop ran past Crystal and Dudley down the stairs. 
Crystal and Dudley returned to the apartment and locked the door.  A few 
moments later, Bishop returned and kicked the front door until it opened.  
Bishop entered and displayed a handgun that was visible to everyone in the 
apartment; he then threatened Crystal and her family.[2]  
After this, Bishop exited the apartment and left.
        Tonja 
called the police, and Officer J. P. Lucas responded. Officer Lucas arrived at 
Crystal’s apartment and noticed that Crystal and Tonja were both very excited 
and hysterical; there was considerable damage to the front door and some damage 
to the bathroom door.  Crystal provided detectives with a written statement 
and identified Bishop as the individual described in her statement.  Bishop 
was charged with aggravated assault with a deadly weapon and pleaded not 
guilty.  The trial court found Bishop guilty and sentenced him to ten 
years’ confinement.
III. Legal and 
Factual Sufficiency
        In 
his first point, Bishop argues that the evidence is factually insufficient to 
sustain his conviction. In his second point, Bishop argues that “the evidence 
is legally insufficient to support a finding of knowingly and intentionally 
causing bodily injury to another.”[3]  
Specifically, Bishop contends either that there is no evidence or that the 
evidence does not support a finding that Bishop “intended to threaten imminent 
bodily injury or that he knowingly threatened bodily injury.”  Bishop 
reasons that he “was simply defending himself from the assault of Crystal 
Haywood” and that “the State’s witnesses can not [sic] be believed” 
because Tonja and Crystal made good on their threats to have Bishop sent back to 
prison.  The State, however, maintains that the evidence is both legally 
and factually sufficient to support Bishop’s conviction.
        A. Standard of Review
        In 
reviewing the legal sufficiency of the evidence to support a conviction, we view 
all the evidence in the light most favorable to the judgment in order to 
determine whether any rational trier of fact could have found the essential 
elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 
U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Ross v. State, 133 S.W.3d 
618, 620 (Tex. Crim. App. 2004). This standard gives full play to the 
responsibility of the trier of fact to resolve conflicts in the testimony, to 
weigh the evidence, and to draw reasonable inferences from basic facts to 
ultimate facts. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789. The trier of 
fact is the sole judge of the weight and credibility of the evidence. See 
Tex. Code Crim. Proc. Ann. art. 
38.04 (Vernon 1979); Margraves v. State, 34 S.W.3d 912, 919 (Tex. Crim. 
App. 2000). Thus, when performing a legal sufficiency review, we may not 
re-evaluate the weight and credibility of the evidence and substitute our 
judgment for that of the fact finder. Dewberry v. State, 4 S.W.3d 735, 
740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131 (2000). We must 
resolve any inconsistencies in the evidence in favor of the judgment. Curry 
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).
        In 
contrast, when reviewing the factual sufficiency of the evidence to support a 
conviction, we are to view all the evidence in a neutral light, favoring neither 
party. See Zuniga v. State, 144 S.W.3d 477, 481 (Tex. Crim. App. 2004). 
The only question to be answered in a factual sufficiency review is whether, 
considering the evidence in a neutral light, the fact finder was rationally 
justified in finding guilt beyond a reasonable doubt. Id. at 484. There 
are two ways evidence may be factually insufficient: (1) the evidence supporting 
the verdict or judgment, considered by itself, is too weak to support the 
finding of guilt beyond a reasonable doubt; or (2) when there is evidence both 
supporting and contradicting the verdict or judgment, weighing all of the 
evidence, the contrary evidence is so strong that guilt cannot be proven beyond 
a reasonable doubt. Id. at 484-85. “This standard acknowledges that 
evidence of guilt can ‘preponderate’ in favor of conviction but still be 
insufficient to prove the elements of the crime beyond a reasonable doubt.” Id. 
at 485. In other words, evidence supporting a guilty finding can outweigh the 
contrary proof but still be insufficient to prove the elements of an offense 
beyond a reasonable doubt. Id.
        In 
performing a factual sufficiency review, we are to give deference to the fact 
finder’s determinations, including determinations involving the credibility 
and demeanor of witnesses. Id. at 481; Cain v. State, 958 S.W.2d 
404, 407 (Tex. Crim. App. 1997). We may not substitute our judgment for that of 
the fact finder’s. Zuniga, 144 S.W.3d at 482.
        A 
proper factual sufficiency review requires an examination of all the evidence. Id. 
at 484, 486-87. An opinion addressing factual sufficiency must include a 
discussion of the most important and relevant evidence that supports the 
appellant’s complaint on appeal. Sims v. State, 99 S.W.3d 600, 603 
(Tex. Crim. App. 2003).
        B. The Evidence is Legally and Factually Sufficient
        A 
person commits the offense of assault if the person “intentionally or 
knowingly threatens another with imminent bodily injury.” Tex. Penal Code Ann. § 22.01(a)(2) 
(Vernon Supp. 2004-05). An assault becomes aggravated if the person “uses or 
exhibits a deadly weapon during the commission of the assault.” Id. § 
22.02(a)(2). Intent or knowledge may be inferred from the acts, words, and 
conduct of an accused at the time of the offense. See Hart v. State, 89 
S.W.3d 61, 64 (Tex. Crim. App. 2002). A person acts intentionally with respect 
to the nature of his conduct or to a result of his conduct when it is his 
conscious objective or desire to engage in the conduct or cause the result. Tex. Penal Code Ann. § 6.03(a) (Vernon 
2003). A person acts knowingly with respect to the nature of his conduct or to 
circumstances surrounding his conduct when he is aware of the nature of his 
conduct or that the circumstances exist. Id. § 6.03(b). Moreover, a 
person acts knowingly with respect to a result of his conduct when he is aware 
that his conduct is reasonably certain to cause the result.  Id.
        In 
the instant case, Bishop and his girlfriend, Monica Lawrence, testified to a 
somewhat different version of the facts than the State’s witnesses.  
Monica testified that she and Bishop drove to Crystal’s apartment to pick up 
Cora and take her to the park.  Monica said that she waited in the car 
while Bishop went to get Cora.  Bishop returned to the car and said that 
Crystal and Tonja were “tripping” because Bishop had arrived with her.  
According to Monica, Bishop returned to the apartment and knocked on the door, 
but came back to the car when no one answered the door.  Bishop did not 
have a gun with him at any time.
        Likewise, 
Bishop testified that he argued with Crystal and told her to “get out of my 
face,” but he did not hit or slap Crystal.  Moreover, he did not kick the 
door in, wave a gun around, or threaten anyone with a gun.  Vicki Al-Hamad, 
Bishop’s mother, testified that in one conversation with Tonja on the 
telephone, she could hear Crystal in the background screaming that Bishop would 
go to jail.
        Despite 
Bishop’s and Monica’s testimony that Bishop did not intentionally or 
knowingly threaten Crystal and Tonja, the record contains legally and factually 
sufficient evidence to support the fact finder’s contrary 
determinations.  Crystal, Tonja, and Dudley all testified to substantially 
similar facts. Crystal and Tonja both testified that Crystal and Bishop argued 
briefly, and then Bishop struck Crystal in the face.  Bishop kicked in the 
bathroom door, Crystal ran out of the bathroom, and Bishop passed her and Dudley 
as he ran down the stairs to the parking lot. Tonja, Crystal, and Dudley all 
testified that Bishop then returned to the apartment, kicked in the front door, 
and, while exhibiting a handgun, threatened to kill Crystal and her 
family.  Officer Lucas observed considerable damage to the front door and 
saw some damage to the bathroom door.  Dudley testified that he had been to 
Crystal’s apartment before the day of the incident and that the doors were not 
damaged at that time.  With regard to the gun displayed by Bishop after he 
kicked the front door open, Officer Lucas testified that a firearm is a deadly 
weapon.  See Tex. Penal Code 
Ann. §§ 1.07(a)(17)(A), 22.02(a)(2) (Vernon Supp. 2004-05). Considering 
the acts, words, and conduct of Bishop, sufficient evidence existed for the 
trial court to find that Bishop did in fact have the appropriate culpable mental 
state (intentional or knowing) at the time he threatened Crystal and 
Tonja.  See id. § 22.01(a)(2); Hart, 89 S.W.3d at 64.
        Bishop 
argues that Crystal and Tonja fabricated their story of events that transpired 
that day, and that, thus, the evidence is insufficient. Officer Lucas arrived 
shortly after the incident.  Crystal and Tonja were “excited” and 
somewhat hysterical.  Officer Lucas did not believe that they were making 
up the story.
        The 
trial court, as fact finder, was entitled to judge the credibility of the 
witnesses and could have chosen to believe all, some, or none of the testimony 
presented.  See Chambers v. State, 805 S.W.2d 459, 461 (Tex. Crim. 
App. 1991); see also Zuniga, 144 S.W.3d at 481.  Therefore, it was 
entirely within the province of the trial court to believe Crystal’s and 
Tonja’s testimony and to disbelieve all or a portion of Bishop’s and 
Monica’s testimony. See Chambers, 805 S.W.2d at 461.  Thus, 
viewing the evidence in the light most favorable to the verdict, we hold that a 
rational trier of fact could have found the essential elements of aggravated 
assault with a deadly weapon beyond a reasonable doubt.  Jackson, 
443 U.S. at 319.  Furthermore, viewing all the evidence in a neutral light, 
favoring neither party, we also conclude that the evidence supporting the 
verdict, taken alone, is not too weak to support the finding of guilt beyond a 
reasonable doubt and that the contrary evidence is not so strong that guilt 
cannot be proven beyond a reasonable doubt.  Zuniga, 144 S.W.3d at 
481.  Accordingly, we hold that the evidence is both legally and factually 
sufficient to support Bishop’s conviction for aggravated assault with a deadly 
weapon.  We overrule Bishop’s first and second points.
IV. Ineffective 
Assistance of Counsel
        In 
his third point, Bishop contends that his trial counsel was ineffective.  
The State maintains, however, that Bishop cannot overcome the strong presumption 
that his trial counsel rendered adequate assistance because Bishop did not bring 
forward a record supporting his claim of ineffective assistance.
        We 
apply a two-pronged test to ineffective assistance of counsel claims.  Strickland 
v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Thompson 
v. State, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  First, an 
appellant must show that his counsel's performance was deficient; second, an 
appellant must show the deficient performance prejudiced the defense.  Strickland, 
466 U.S. at 687, 104 S. Ct. at 2064.
        In 
evaluating the effectiveness of counsel under the first prong, we look to the 
totality of the representation and the particular circumstances of each 
case.  Thompson, 9 S.W.3d at 813.  The issue is whether 
counsel's assistance was reasonable under all the circumstances and prevailing 
professional norms at the time of the alleged error. See Strickland, 466 
U.S. at 688-89, 104 S. Ct. at 2065. “[C]ounsel is strongly presumed to have 
rendered adequate assistance and made all significant decisions in the exercise 
of reasonable professional judgment.”  Id. at 690, 104 S. Ct. at 
2066.  An allegation of ineffective assistance must be firmly founded in 
the record, and the record must affirmatively demonstrate the alleged 
ineffectiveness.  Thompson, 9 S.W.3d at 813. Our scrutiny of 
counsel's performance must be highly deferential, and every effort must be made 
to eliminate the distorting effects of hindsight.  Strickland, 466 
U.S. at 689, 104 S. Ct. at 2065.
        The 
second prong of Strickland requires a showing that counsel's errors were 
so serious that they deprived the defendant of a fair trial, that is, a trial 
whose result is reliable.  Id. at 687, 104 S. Ct. at 2064. In other 
words, appellant must show there is a reasonable probability that, but for 
counsel's unprofessional errors, the result of the proceeding would have been 
different.  Id. at 694, 104 S. Ct. at 2068.  A reasonable 
probability is a probability sufficient to undermine confidence in the 
outcome.  Id. The ultimate focus of our inquiry must be on the 
fundamental fairness of the proceeding whose result is being challenged.  Id. 
at 697, 104 S. Ct. at 2070.
        Generally, 
the trial record will not be sufficient to establish an ineffective assistance 
of counsel claim.  Jones v. State, 133 S.W.3d 307, 312 (Tex. 
App.—Fort Worth 2004, no pet.).  This is often the case because a silent 
record cannot rebut the presumption that counsel’s performance was the result 
of sound or reasonable trial strategy.  Strickland, 466 U.S. at 688, 
104 S. Ct. at 2052; Mallet v. State, 65 S.W.3d 59, 63 (Tex. Crim. App. 
2001).  A record affirmatively demonstrating the alleged ineffectiveness 
may, however, be provided by a motion for new trial hearing. See Jones, 
133 S.W.3d at 312.
        Bishop 
points to no specific act or omission on the part of his trial counsel that 
rendered her assistance ineffective.  Bishop merely states that “his 
trial counsel could have argued more forcefully, and in general worked harder to 
defend him.”  The record demonstrates that trial counsel for Bishop 
diligently represented him by calling multiple witnesses at both the 
guilt/innocence and punishment phases of the trial, soundly cross-examining the 
State’s witnesses, and appearing to be well prepared at all stages of the 
trial.  Consequently, Bishop’s self-described “blanket contentions” 
are not firmly founded in the record, and the record does not affirmatively 
demonstrate any alleged ineffectiveness.  See Thompson, 9 S.W.3d at 
813.  Moreover, although Bishop filed a motion for new trial, a hearing was 
not held on the motion.  Therefore, Bishop did not demonstrate any alleged 
ineffectiveness in a motion for new trial hearing.  See Jones, 133 
S.W.3d at 312.  Thus, Bishop has failed to rebut the presumption that trial 
counsel made reasonable decisions and provided effective assistance.  See 
Thompson, 9 S.W.3d at 814.  We overrule Bishop’s third point.
V. Conclusion
        Having 
overruled each of Bishop’s three points, we affirm the trial court’s 
judgment.
    
   
                                                                  SUE 
WALKER
                                                                  JUSTICE
  
  
PANEL 
B:   DAUPHINOT, HOLMAN, and WALKER, JJ.
 
DO 
NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: 
February 17, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Crystal testified, “He had a gun in his right hand, and he was saying that he 
would kill me, he would kill my whole family, and that I didn’t know him, or I 
wasn’t - - I didn’t know what he was capable of.”
3.  
Bishop was charged with threatening bodily injury, not causing bodily 
injury.  Therefore, we liberally construe Bishop’s point as challenging 
the sufficiency of the evidence to support a finding of intentionally or 
knowingly threatening another with imminent bodily injury.