Robert Ward HART, Appellant,

v.

The STATE of Texas.

No. 1865–00.

Court of Criminal Appeals of Texas, En Banc.

Nov. 6, 2002.

---

22. *See also Zavala,* 956 S.W.2d at 721–722.

Allen C. Isbell, Houston, for Appellant.

Matthew Paul, State's Attorney, Austin, for State.

---

## OPINION

PRICE, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, JOHNSON, HERVEY, and COCHRAN, J.J., joined.

The appellant was convicted of engaging in organized criminal activity. Tex. Penal Code § 71.02(a)(1). The jury assessed a punishment of nine years' confinement in the Texas Department of Criminal Justice Institutional Division and a fine of $1,000.

On direct appeal, the appellant claimed that the evidence was legally insufficient to show that he intended to establish, maintain, or participate in the criminal combination. The Court of Appeals reversed the conviction and rendered a judgment of acquittal. *Hart v. State*, No. 14–99–00010–CR, slip op. at 3, 2000 WL 1228609, delivered August 29, 2000 (substituted majority opinion) (not designated for publication). The Court explained that, although the evidence supported the conclusion that the appellant intended to assist in the theft of a vehicle on August 16, 1997, the evidence did not support the conclusion that the appellant intended to establish, maintain, participate in, or participate in the profits of a combination. *Ibid.*

We granted the State's petition for discretionary review to determine whether, to sustain a conviction for engaging in organized criminal activity the State must show: (1) that the defendant was a member of the combination, and (2) that the defendant did more than commit *one* enumerated offense with the intent to establish, maintain, participate in, or participate in the profits of a combination.[1]

### I. Is membership required?

---

1. Texas Penal Code § 71.02(a)(1) provides, in relevant part, that "[a] person commits an offense if, with the intent to ... participate in a combination ..., he commits or conspires to commit one or more of [several enumerat-ed offenses, including theft]." Texas Penal Code § 71.01(a), in turn, defines "combination" as "three or more persons who collaborate in carrying on criminal activities."

■ The State complains that the Court of Appeals's opinion requires that it prove that the defendant participated or agreed to participate in the commission of more than one crime. This, the State contends, is tantamount to requiring the State to prove that the defendant was a *member* of the criminal combination, which is not an element of the offense.

The Court of Appeals and the State rely on Penal Code sections 71.01 and 71.02 and the interpretation of those sections found in *Nguyen v. State*, 1 S.W.3d 694 (Tex. Crim.App.1999). Under the Penal Code, a person engages in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, he commits or conspires to commit one or more [enumerated offenses, including theft]." Tex. Penal Code § 71.02.

■ The term combination means "three or more persons who collaborate in carrying on criminal activities." Tex. Penal Code § 71.01(a). To establish participation in a combination, the State must prove "that the appellant intended to 'establish, maintain, or participate in' a group of three or more, in which the members intend to work together in a continuing course of criminal activities." *Nguyen*, 1 S.W.3d at 697.

The Court of Appeals held that, in this case, there was no evidence of the requisite intent as required by *Nguyen v. State*, 1 S.W.3d 694, 697 (Tex.Crim.App.1999). *Hart*, slip op. at 3. According to the Court of Appeals, the State proved nothing more than that the appellant participated in the theft of an automobile; the State did not show that he was aware of the combination's existence and that he intended to participate in the combination. *Ibid.* We agree with the State that a person need not be a member of a combination to be guilty of engaging in organized criminal

activity. That said, we will address the State's second ground for review.

## II. Must the State prove the requisite intent plus the commission of *more than one* offense?

■ The State argues that the Court of Appeals required that it show more than the intent to establish, maintain, or participate in, or participate in the profits of a combination *and* the commission of one of the enumerated offenses.

In *Nguyen*, the State failed to prove the *existence* of a combination and that the defendant intended to establish, maintain, participate in, or participate in the profits of a combination. *Nguyen*, 1 S.W.3d at 697. Here, the question is not whether a combination existed; the record contains ample proof to support a finding that a combination existed. We must determine whether the record contains evidence that the appellant possessed the requisite intent for engaging in organized criminal activity.

There are two parts to the mental state requirement in engaging in organized criminal activity. One mental state requirement is included in the commission of one of the enumerated offenses. Tex. Penal Code § 71.02(a). For example, if the enumerated offense is theft, the State must prove that the appellant intended to deprive the owner of property as part of proving the underlying enumerated offense. Tex. Penal Code § 31.03(a).

The other mental state requirement in section 71.02(a) is that the defendant intend to establish, maintain, participate in, or participate in the profits of a combination. This second requirement must be more than the intent to commit the enumerated offense because otherwise the statutory element would be superfluous. The proof must consist of more than evidence that a combination existed and that

the defendant committed one of the enumerated offenses; the evidence must support a finding that the defendant intended to establish, maintain, participate in, or participate in the profits of a combination. Otherwise, the express requisite intent in the statute would be meaningless.

Direct evidence of the requisite intent is not required, however. We have explained that:

> [a] jury may infer intent from any facts which tend to prove its existence, including the acts, words, and conduct of the accused, and the method of committing the crime and from the nature of wounds inflicted on the victims. A jury may also infer knowledge from such evidence. This has been the rule in Texas for over 100 years.

*Manrique v. State,* 994 S.W.2d 640, 649 (Tex.Crim.App.1999) (citations omitted). We must examine the entire record to see whether it contains evidence of the requisite intent.

The evidence at trial showed that the Auto Theft Division of the Houston Police Department had been investigating a series of car thefts at the Sterling McCall Toyota dealership. The dealership had had thirty-two vehicles stolen over a period of fifteen months. By August 16, 1997, the management took steps to try to catch the thieves in the act. Police learned from a confidential informant that on the night of August 16, 1997, a theft was planned.

Craig Newman, an officer with the auto theft division of the Houston Police Department, testified that he was on the roof of a parking garage near the dealership on the night of August 16. Other officers were stationed in a parking lot down the street and some on the access road on which the dealership was located.

Around 9:30 or 9:45 p.m., Newman saw a Mazda truck being driven onto the lot.

The information that the police had received indicated that the thieves would come in a Mazda truck. A man, later identified as the appellant, was the driver of that truck. The appellant and his passenger, later identified as Percival Leonard, got out of the truck and wandered around. A salesman came up to the appellant, and they talked.

Joel Flores was the salesperson to whom the appellant spoke on this visit to the dealership. The appellant stood by his Mazda truck, in which some other person was sitting. The appellant asked for a business card from Flores and claimed that he was looking for a small truck. He spoke with Flores for two to three minutes, and then said he would return. After talking to Flores, the appellant went back to his truck and drove off the lot.

About an hour later, Newman saw the same Mazda truck on the access road near an entrance to the dealership. This time the taillights were not working. The truck stopped, a man was let out, and the truck did not move for about thirty seconds. Newman testified that the driver appeared to be looking out the window and watching the man who had gotten out of the truck. The truck was driven around a loop and back by the dealership. Then the driver drove the truck onto the highway. When the truck was stopped by police officers about three minutes later, the appellant was driving and Leonard was the only passenger. They were both arrested. Flores's business card was found on the driver's seat of the Mazda truck.

The man who had gotten out of the truck ran along a hedgerow to a two-tone beige Land Cruiser, got in, and drove it off the lot. When the Land Cruiser was stopped by police officers a few minutes later, Barry Johnson, who had been driving, was arrested.

After the arrests, the police learned that Ivory George, an employee of the dealership, had provided a key for the theft of the vehicle that night. George testified that he participated in an auto theft ring by obtaining the keys for the men who would drive the cars off the lot. He explained that he had been assisting in stealing vehicles for about six months. Ernie Cornelius, a former mechanic at the dealership invited him to participate in the theft ring. Cornelius introduced him to Thomas Romain, who also was involved in the theft ring.

George said he first saw the appellant on August 16, 1997. He had been at his apartment when Leonard, Johnson, and the appellant came over around noon in a Blazer. Leonard came to the door of his apartment, and the four men talked behind the apartment building. He had given Leonard a key one time before August 16. Leonard told George that Romain wanted a Land Cruiser and wanted George to get the key.

George explained that he had never seen Johnson or Hart before that day. In the past, he had given keys to Cornelius and others. He never knew who was going to steal the cars. His only responsibility was to provide the keys. He was not scheduled to work on August 16, but he went to the dealership and got the key to the Land Cruiser anyway.

The three men returned to George's apartment around 3:00 or 4:00 p.m. They talked behind his apartment building again. While the men were talking, George laid the key on the hood of his car. He does not know who took the key.

Daryl Smith of the Houston Police Department auto theft divisions testified that Romain was the head of the theft ring. Cornelius ran the body shop for Romain. Romain ordered the cars, George stole the keys, and someone contacted George to

get the keys from him. The vehicle would be delivered to Romain, who had Cornelius create a title with fictitious names and addresses. The vehicles were sold to people who knew they were stolen. These people told the police about the theft ring.

The evidence at trial supports a finding that the appellant participated in one theft with people who had been participating in a theft ring. The evidence does not support a finding that the appellant knew of the theft ring's existence and that he intended to participate in the theft ring.

The dissent to the Court of Appeals's majority believed that there was evidence of intent to participate in the theft ring.

Here, the record shows appellant was invited to participate in, and did participate in, a large theft ring that had been stealing automobiles from a Houston car dealership for many months. To what degree, if any, he may have participated in previous thefts perpetrated by the combination is not known, but the State did establish that he participated in the final theft of a Toyota Land Cruiser in August of 1997. Moreover, he was present when the plans were formulated to steal the vehicle. While the record contains no direct evidence showing the appellant intended to participate in future thefts, he had obviously joined an established active enterprise that had a long history of criminal activity. Moreover, he had no reason to suspect that he and his companions were about to be captured by the police or that this theft would be the last criminal act of the combination.

*Hart*, No. 14–99–00010–CR, dissent slip op. at 2 (Hudson, J., dissenting). We disagree with the dissent's conclusion.

The evidence shows that the appellant was invited to participate in the theft, that he helped plan the theft, and that he par-

ticipated in carrying out the plan. Newman testified about the appellant's participation in the theft, and George testified about his participation in the planning. But George did not testify that anyone ever mentioned the theft ring while planning the theft of the Land Cruiser.

If George had testified that the theft ring was discussed in the appellant's presence, we could assume by his later participation in the theft that he intended to participate in the theft ring. But, because there was no evidence that the appellant knew of the theft ring's existence, we cannot conclude that the appellant intended to participate in the theft ring.

We hold that the evidence in this case was legally insufficient to support the conviction for engaging in organized criminal activity. The evidence was sufficient to support a conviction for theft of the Land Cruiser, and the trial court included an instruction on that lesser-included offense in the jury charge. We affirm the Court of Appeals's judgment in part, render a verdict of guilt for theft of property valued greater than $20,000 but less than $100,000, and remand the case to the trial court for a new punishment determination. Tex. Penal Code § 31.03(e)(5); Tex.R.App. P. 78.1(c); see Collier v. State, 999 S.W.2d 779, 781 (Tex.Crim.App.1999).

KEASLER, J., concurred.

HOLCOMB, J., filed a dissenting opinion, in which WOMACK, J., joined.

HOLCOMB, J., filed a dissenting opinion, in which WOMACK, J., joined.

A Harris County jury found appellant, Robert Ward Hart, guilty of engaging in organized criminal activity.[1] On direct appeal, appellant argued that the evidence was legally insufficient to support his conviction because the State failed to "prove that [he] and two or more [other] people agreed to work together in a continuing course of criminal activities." The Fourteenth Court of Appeals, with one justice dissenting, accepted appellant's argument, reversed the judgment of the trial court, and rendered a judgment of acquittal. Hart v. State, No. 14–99–00010–CR, 2000 WL 1228609 (Tex.App.-Houston [14th Dist.] 2000) (not published). A majority of this Court now affirms the court of appeals' judgment of acquittal. I respectfully dissent, and I do so for two reasons.

First, even assuming, for the sake of argument, that the majority is correct in its view that Penal Code § 71.02(a) requires, for conviction, evidence that the defendant knew of the combination's existence, the evidence adduced at appellant's trial was sufficient to prove exactly that. Given the evidence adduced at trial, discussed at length in the majority's opinion, a reasonable jury could have concluded beyond a reasonable doubt that (1) appellant conspired with a group of three other people to steal a key to a Land Cruiser from Sterling McCall Toyota in Houston, (2) appellant later participated, along with two members of the same group, in the theft of the Land Cruiser, and (3) appellant knew that one or more members of the same group would later forge a title to the Land Cruiser in order to facilitate its unlawful sale. In other words, given the

1. The exact grounds on which we granted review are:
  1. Does a person have to be a member of a combination in order to commit the offense of engaging in organized criminal activity?
  2. Does a person commit the offense of engaging in organized criminal activity if,

with intent to establish, maintain, or participate in a combination or the profits of a combination, the person commits or conspires to commit one of the crimes listed in Penal Code section 71.02(a)?

evidence at trial, a reasonable jury could have found that appellant was a party to the theft of the Land Cruiser as part of his ongoing collaboration with others to carry on criminal activities. Thus, the evidence was sufficient to support appellant's conviction even under the majority's reading of the statute.

Second, I do not agree with the majority's view that § 71.02 requires, for conviction, evidence that the defendant knew of the combination's existence. Under our decision in *Boykin v. State*, 818 S.W.2d 782 (Tex.Crim.App.1991), we must interpret unambiguous statutes literally, unless doing so would lead to absurd results. Read literally, § 71.02(a)(1) does not require, for conviction, that the defendant actually knew that the group in which he intended to participate was a combination. To prove an offense, the State need only prove that (1) a person (2) committed one of the enumerated offenses (3) with the intent to participate in a group, and (4) the group was in fact a combination. In this case, the State plainly proved all four of those elements.

Our decision in *Nguyen v. State*, 1 S.W.3d 694 (Tex.Crim.App.1999), provides no support for the majority's decision today. In that case, we had to decide whether the evidence adduced at trial proved the existence of a combination. There, the evidence showed that the defendant was guilty of murder, but there was no evidence of a continuing course of criminal activity. The evidence showed that a confrontation erupted between the defendant and his friends on the one hand and the victim and his friends on the other, that the defendant and his friends left the scene, and that they later returned with the murder weapon. There was no evidence that *any* of the actors intended to commit more than one crime. We recognized that that fact pattern did not fit within the language or spirit of the organized crime statute.

The instant case, in contrast, fits squarely within the language of the statute. It is undisputed that a combination existed. Furthermore, the evidence established that appellant was invited to participate, and did participate, in a theft planned by the combination. That is sufficient for conviction under the statute.

Section 71.02(a)(1)'s plain language does not require, for conviction, specific knowledge on the part of the defendant of prior criminal acts by members of the combination. It does not require that the defendant be involved in planning, have a desire to commit future criminal acts, or be able to identify other participants. The statute requires only that the defendant 'intend to participate,' which appellant did.

The apparent legislative intent underlying § 71.02(a)(1) is to penalize *all* those involved in organized criminal activity. Even if the accused participates in only one enumerated offense, he is guilty of organized criminal activity if he also intends to participate in a group which is in fact a combination. Those with the bad luck to be apprehended in the course of their first (and, hence, their last) offense are to be treated as part of the combination. The underlying policy of deterrence is obvious.

I respectfully dissent.