**Opinion filed June 27, 2013**



In The

# Eleventh Court of Appeals

_____

## No. 11-11-00042-CR

_____

## JENNIFER MARIE VALLEY, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 29th District Court**
**Palo Pinto County, Texas**
**Trial Court Cause No. 14161F**

## M E M O R A N D U M   O P I N I O N

The jury convicted Jennifer Marie Valley, Appellant, of the offense of engaging in organized criminal activity and assessed her punishment at confinement for thirty-seven years and a fine of $22,500. We affirm.

Appellant presents two issues and several sub-issues for review on appeal. In the first issue, Appellant challenges the legal sufficiency of the evidence. Under this issue, Appellant complains that the indictment and jury charge were defective,

that the elements of the offense were not proven, that the evidence was insufficient to corroborate the testimony of the accomplice witnesses, that the admission of evidence regarding the accomplice witnesses' convictions constituted error, that the State failed to prove a conspiracy between Appellant and each of the alleged conspirators, and that the State failed to prove a conspiracy to commit the offense of engaging in organized criminal activity. In her second issue, Appellant argues that the trial court abused its discretion in permitting testimony related to evidence that had been suppressed and in denying Appellant's request for a continuance.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we examine all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and any reasonable inferences from it, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). To support a conviction based upon the testimony of an accomplice, there must be corroborating evidence that tends to connect the accused with the offense. TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005); *Reed v. State*, 744 S.W.2d 112 (Tex. Crim. App. 1988). To determine the sufficiency of the corroboration, we must examine the testimony of the non-accomplice witnesses and determine if there is inculpatory evidence tending to connect Appellant to the crime. *Reed*, 744 S.W.2d at 127. An accomplice witness need not be corroborated in all his testimony, and the corroboration need not directly link the accused to the crime or be sufficient in itself to establish guilt. *Id.*

The statute applicable to the offense of engaging in organized criminal activity is TEX. PENAL CODE ANN. § 71.02 (West Supp. 2012). That statute provides in relevant part:

(a) A person commits an offense if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination . . . , the person commits or conspires to commit one or more of the following:

. . . .

(5) unlawful manufacture, delivery, dispensation, or distribution of a controlled substance **or** dangerous drug, **or** unlawful possession of a controlled substance or dangerous drug through forgery, fraud, misrepresenttation, or deception (emphasis added).

A combination is defined as "three or more persons who collaborate in carrying on criminal activities." TEX. PENAL CODE ANN. § 71.01(a) (West 2011).

Appellant was indicted along with fourteen other named individuals who, according to the indictment, "did then and there, with the intent to establish, maintain, or participate in a combination or in the profits of a combination . . . conspire to commit the offense of delivery of controlled substance, namely methamphetamine, in an amount over 400 grams by agreeing with each other that they would engage in conduct that constituted said offense." The indictment also alleged that, in furtherance of said agreement, Appellant committed the overt act of delivery of between one and four grams of methamphetamine to Jay Hutchens on or about June 17, 2008. The jury charge contained similar language. Contrary to Appellant's assertion, neither the indictment nor the jury charge should have included the remaining language from Section 71.02(a)(5) relating to a dangerous drug or to the possession of a controlled substance or dangerous drug through forgery, fraud, misrepresentation, or deception. As emphasized above, Section 71.02(a)(5) is couched in disjunctive terms, and the omitted terms would

merely have referenced alternatives that did not apply to the facts in this case. The indictment and the jury charge included the essential elements of the crime.

The evidence presented at trial included the testimony of several witnesses. Michael Donald Stoner testified that, at the time of this offense, he was a narcotics investigator for the Texas Department of Public Safety. By the time of trial, he had become a Texas Ranger. Ranger Stoner testified that his goal as a narcotics investigator was to locate the source of the narcotics and disrupt the flow of drugs by taking out the source. The investigation in this case lasted for more than one year.

During the course of the investigation, Sergeant Jay Hutchens was the supervisor of the City County Narcotics Unit in Mineral Wells. Sergeant Hutchens explained that various techniques are used in the investigations of drug traffickers, including drug purchases by undercover officers and confidential informants, numerous hours of surveillance, and intel from the local patrol officers. Sergeant Hutchens testified that, on June 17, 2008, while working undercover, he portrayed himself to be a drug user and attempted to purchase methamphetamine from Edward Lotz, from whom he had previously purchased drugs. He went to Lotz's house to negotiate the purchase of a "sixteenth" of an ounce of methamphetamine for $120. Lotz agreed, but he did not have the drugs on his person. Lotz made a phone call. Shortly thereafter, Appellant pulled up in a white Ford Mustang. Lotz gave Appellant some money, and Appellant handed Lotz a small plastic baggie that contained methamphetamine. Lotz then handed the methamphetamine to Sergeant Hutchens, who inspected the methamphetamine and gave Lotz $120 of marked money. Lotz then handed the marked money to Appellant, and she left. The substance in the baggie was subsequently tested by a forensic scientist who determined that the substance weighed 1.47 grams and contained methamphetamine.

4

Officer Penny Judd of the Mineral Wells Police Department testified that she was assigned to the City County Narcotics Unit at the time of this offense. She conducted surveillance on Sergeant Hutchens when he went to Lotz's residence and purchased methamphetamine. Officer Judd observed the white Ford Mustang arrive at the residence and saw Lotz and Sergeant Hutchens approach the Mustang.

Edward Lotz, one of the named coconspirators, testified that he was serving a fifteen-year sentence in this case.[1] Lotz testified similarly to Sergeant Hutchens regarding the purchase on June 17, 2008, and Appellant's involvement in that purchase. According to Lotz, Sergeant Hutchens came to Lotz's house to purchase methamphetamine, but Lotz did not have any on hand and called Appellant to have it delivered. Appellant drove up in a white Mustang. Lotz took the money from Sergeant Hutchens and gave it to Appellant. Appellant then handed Lotz the methamphetamine, and Lotz handed the methamphetamine to Sergeant Hutchens. Lotz said he had known Appellant for about six months and had obtained drugs from her about ten times. Each time, Lotz purchased about a "sixteenth" and paid Appellant $120. Lotz testified that Appellant was his source for drugs.

Jennifer Marie Lawhorn testified that Appellant's house "was the place to go" to purchase methamphetamine. Lawhorn was stopped by Deputy Gary Morris in September 2008 after leaving Appellant's residence with one gram of methamphetamine that she had purchased from Appellant. The deputy seized the methamphetamine. Prior to that date, Lawhorn had purchased methamphetamine from Appellant about fifteen times over a three-month period. Like Lawhorn, Barbara Olson was stopped by Deputy Morris after leaving Appellant's house in September 2008, where she had just purchased methamphetamine. Olson testified

---

[1]In one of her sub-issues, Appellant asserts that reversible error occurred when the prosecutor elicited testimony from the accomplices that they had been convicted and were serving time for the offense for which Appellant was on trial. Appellant did not object to this evidence at trial and, therefore, failed to preserve this complaint for appellate review. TEX. R. APP. P. 33.1(a).

that she had purchased small quantities of methamphetamine from Appellant about twenty-five different times. Deputy Morris seized the methamphetamine during both traffic stops, and both Lawhorn and Olson were subsequently arrested. Deputy Morris confirmed that, at the time of this offense, he was working with the City County Narcotics Unit as a uniformed officer in a marked unit. He conducted traffic stops of vehicles coming and going from residences that were under surveillance.

Jack Baker, a named coconspirator serving a 25-year sentence in this case, had made no deals with the prosecutor in return for testifying at Appellant's trial. Baker testified that he had known Appellant for quite a few years, since they were teenagers. Baker admitted that he sold methamphetamine to Appellant for about six to eight months before he was arrested. During those months, Appellant purchased from Baker "[a]bout half an ounce" of methamphetamine "[e]very day, if not every other day." Using a calculator on the witness stand, Baker figured that, if Appellant had made a purchase only every other day for six months, she would have purchased about forty-five ounces of methamphetamine, which translates to 1,260 grams. Baker testified that Appellant was also getting methamphetamine from other people too and that he had no contract with her.

The record shows that, based upon two outstanding arrest warrants, Deputy Morris arrested Appellant during a traffic stop on December 10, 2008, and took her to jail. At the jail, Officer Judd retrieved two small baggies containing a crystal-like substance from Appellant. The substance was tested by a forensic scientist; it weighed 3.07 grams and contained methamphetamine.

The day after her arrest, Appellant was interviewed at the jail by Ranger Stoner. A DVD of that interview was admitted into evidence and played for the jury during trial. During her interview, Appellant stated that her supplier was Jack Baker. Ranger Stoner testified that Appellant "was dealing with multiple

people at her level, as well as people above her level." Ranger Stoner had obtained information from Baker that one of Baker's suppliers, but not his main source of supply, was Edgar Cruz, also known as "Chicago." Cruz was a named coconspirator in this case.

With respect to Appellant's accomplice-witness argument, we hold that the testimony of the accomplices was sufficiently corroborated by the non-accomplice testimony of Sergeant Hutchens, Officer Judd, and Deputy Morris and also by Appellant's own statements made during her interview. The non-accomplice evidence tended to connect Appellant to the crime.

Furthermore, contrary to Appellant's contention, the State did not need to prove a conspiracy between Appellant and each of the alleged conspirators; it only needed to prove that Appellant intended to participate in a combination of three or more collaborating persons. In proving the existence of a combination, the State need not demonstrate the participation of all alleged members of the combination; the State need only prove the participation of at least three of the named members of the combination, including the defendant. *Rodriguez v. State*, 90 S.W.3d 340, 354 (Tex. App.—El Paso 2001, pet. ref'd). Pursuant to Section 71.01(a)(3), participants in a combination of three or more persons collaborating to carry on criminal activities "may stand in a wholesaler-retailer or other arm's-length relationship in illicit distribution operations." The evidence showed that Appellant acted in combination with Lotz, Baker, and Cruz to deliver methamphetamine. The evidence also showed that the overt act alleged in the indictment was not an isolated incident but, rather, a continuing course of conduct and that Appellant had the intent to participate in the combination or the profits thereof. *See Hart v. State*, 89 S.W.3d 61, 63–64 (Tex. Crim. App. 2002).

Appellant also contends that the lack of a charge on the law of parties and the use of the term "delivered," rather than "constructively delivered," in the indictment

caused the jury charge to be erroneous and the evidence to be insufficient. We disagree. "Deliver" was defined in the jury charge as follows: "to transfer, actually or constructively, to another a controlled substance." The definition tracked TEX. HEALTH & SAFETY CODE ANN. § 481.002(8) (West 2010). The trial court also defined "[c]onstructive delivery" as the "transfer by a person of a controlled substance either belonging to her or under her control by some other person or means at the direction of the person." The overt act alleged to have been committed by Appellant was the delivery of methamphetamine to Sergeant Hutchens. Neither in the indictment nor in the jury charge was it alleged that Appellant "actually" transferred or "actually" delivered the methamphetamine to Sergeant Hutchens. Appellant's contention that "the jury could not find that [Appellant] made a 'constructive delivery' . . . when the jury charge did not include a 'law of the parties' charge" is not correct. Based on the definition of "constructive delivery," a charge on the law of parties was unnecessary. The evidence was sufficient to show that Appellant constructively delivered methamphetamine to Sergeant Hutchens.

After reviewing all of the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. The jury could have found that Appellant committed the offense of unlawful delivery of a controlled substance by delivering one to four grams of methamphetamine to Sergeant Hutchens on or about June 17, 2008, and that, in doing so, Appellant acted with the intent to participate in a "combination" or in the profits of a "combination" to carry on criminal activities: the delivery of methamphetamine. We hold that the evidence is sufficient to support Appellant's conviction for engaging in organized criminal activity. Appellant's first issue, including all of its sub-issues, is overruled.

Appellant's contentions in her second issue and its sub-issues involve Deputy Morris's testimony about Appellant's arrest on December 10, 2008;

8

evidence stemming from that arrest; and the denial of Appellant's pretrial motion for continuance. Appellant asserts that the trial court abused its discretion when, after granting her motion to suppress any statements she made while in custody before being notified of her *Miranda*[2] rights, the trial court permitted testimony about the events that transpired after the suppressed statements. Appellant asserts that the methamphetamine seized at the jail and any statements she made during her interview the next day with Ranger Stoner constituted "fruit of the poisonous tree" and should have been suppressed. The record shows that, with respect to the interview, Appellant objected on a different basis and that, with respect to the methamphetamine, she stated that she had no objection to its admission into evidence. Therefore, Appellant did not preserve this complaint for review because she did not object on such basis at trial. TEX. R. APP. P. 33.1(a); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002). Moreover, neither the methamphetamine seized at the jail nor the statements made during her interview the next day—after being notified of her rights under *Miranda*—constituted the fruit of a poisonous tree. Appellant was arrested and taken to jail because she had two outstanding arrest warrants; the methamphetamine was seized as a result of her arrest, not as a result of any statement she made to Deputy Morris.

Appellant's assertion that the trial court abused its discretion in denying her motion for continuance is also without merit. The record shows that Appellant had had retained counsel adequately representing her in this case for more than one year when she retained another attorney approximately one month before this case was set for trial. On December 30, 2010, just four days before the trial was set to begin, Appellant's newly retained counsel filed a motion for continuance. The trial court heard the motion on the morning of trial. New counsel asserted that she needed time to adequately prepare for trial. The trial court noted that Appellant

---

[2]*Miranda v Arizona*, 384 U.S. 436 (1966).

had had other counsel for over a year and expressed a concern that granting Appellant's motion would "cause[] a cancellation of a [jury] trial that has already been set." The State pointed out that Appellant had "been on notice since November the 9th" that this case was set for trial. The right to obtain counsel of one's own choice is neither unqualified nor absolute; that right must be balanced with a trial court's need for the prompt and efficient administration of justice. *Ex parte Windham*, 634 S.W.2d 718, 720 (Tex. Crim. App. 1982). We hold that the trial court acted within its discretion in denying Appellant's motion for continuance. *See id.* at 720–21. Appellant's second issue, including its sub-issues, is overruled.

We affirm the judgment of the trial court.

JIM R. WRIGHT
CHIEF JUSTICE

June 27, 2013

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Willson, J.