In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00333-CR
_____

**CHARLIE SMITH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 284th District Court**
**Montgomery County, Texas**
**Trial Cause No. 11-10-11588-CR**

**MEMORANDUM OPINION**

A jury found Charlie Smith guilty of two counts of engaging in organized criminal activity, and the trial court sentenced him to life in prison for each count. Smith filed this appeal.

Smith argues that the evidence is insufficient to support a conviction on either count of the offense of engaging in organized criminal activity. A person engages in organized criminal activity if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, he commits or

1

conspires to commit one or more enumerated offenses, including theft. Tex. Penal Code Ann. § 71.02(a) (West Supp. 2012). A "combination" requires three or more persons who collaborate in carrying on criminal activities. *Id.* at § 71.01(a) (West 2011). To "collaborate in carrying on criminal activities" requires more than an agreement to jointly commit a single crime. *Nguyen v. State*, 1 S.W.3d 694, 696-97 (Tex. Crim. App. 1999); *Adams v. State*, 40 S.W.3d 142, 144 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). There must be evidence of an agreement to act together in this continuing course of activity. *Ledet v. State*, 177 S.W.3d 213, 218 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd). Direct evidence of intent is not required; circumstantial evidence may be used. *Id.* (citing *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002)).

In addition to proving that Smith committed the underlying offenses with two or more people, the State had to prove that Smith committed the underlying offenses with the specific intent to "establish, maintain, participate in, or participate in the profits of a combination." *Hart*, 89 S.W.3d at 63-64. The State is required to prove "continuity" -- that Smith and two or more people agreed "to work together in a continuing course of criminal activities." *Nguyen*, 1 S.W.3d at 697.

Smith does not challenge the sufficiency of the evidence to convict him of the underlying April 6, 2010 offenses; he only challenges the sufficiency of the evidence to convict him of engaging in organized criminal activity. The standard for determining the sufficiency of the evidence under *Jackson v. Virginia* is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury resolves conflicts in testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Hooper*, 214 S.W.3d at 13.

James Wall was driving a tractor trailer rig and delivering cigarettes and candy to a retail store. Around 2 a.m., he drove around to the store's loading dock. He noticed a yellow moving truck parked in the area; no one was in the truck. He got out of his truck and walked around the back of the tractor trailer rig. While opening the first door, he was tackled from behind and knocked to the ground. The two attackers were wearing dark uniforms, ski masks, and gloves. Wall's hands were duct-taped behind his back. He heard another vehicle approach, and he was shoved onto the back seat floorboard of a pickup truck. Wall heard the men

speaking on a radio. The driver drove him in the truck for about a minute, parked, and then moved a little bit before stopping. Wall was in the truck for fifteen to twenty minutes, and was ultimately pulled out of the truck. He fell to the ground and his wallet was stolen. The men drove off. Wall suffered injuries as a result of the attack.

A GPS device planted in the stolen merchandise led authorities to a Houston residence. Law enforcement arrived at the residence about five hours after Wall was attacked and the merchandise was stolen. A yellow moving truck and a green, extended-cab pickup with a white cargo trailer were parked at the residence. At one point, Kenneth Adams was detained outside the residence. Adams said he knew Smith, and Adams's phone showed that Smith had called Adams.

While law enforcement officials were waiting for a search warrant for the house and vehicles, Smith arrived at the residence. Smith said he was on his way to work and was going to check on his mother who lived in the neighborhood. Smith identified himself as the owner of the pickup truck and trailer. He stated that the reason the truck and trailer were at the residence was because he had let someone he thought was named "Calvin" borrow them. Smith could not provide law enforcement with the person's phone number. Smith explained that his friend, Derrick Pipkins, lived at the residence.

4

Once the search warrant was signed, law enforcement officials gained entry into the residence. Wall's wallet and approximately twenty cases of cigarettes were found in the home. Inside one of the cases were a packing slip and a partial roll of silver duct tape. Mail belonging to Pipkins was found in the house.

Smith consented to the search of his pickup truck and trailer. The white trailer appeared to be completely filled with cases of cigarettes. Approximately one hundred and five cases of cigarettes were ultimately recovered. Two black masks (one store-bought and one homemade) were recovered from the floorboard of the pickup truck. Smith could not be excluded as a contributor of the DNA profile obtained from one of the ski masks. A forensics expert testified at trial that the probability of selecting an unrelated person at random who could be a contributor to the DNA profile at all of the locations on the mask was "approximately 1 in 207.8 trillion for Caucasians; 1 in 2.635 trillion for blacks; and 1 in 534.2 trillion for Hispanics."

The jury heard evidence of other criminal activities. Just past midnight on August 25, 2010, a Texas City police officer noticed a suspicious van pulling out from behind a tobacco business that the officer knew had been burglarized after business hours on several occasions. After observing the driver committing a traffic violation, the officer stopped the van. Smith was the driver and Larry

Lawrence was a passenger. A walkie-talkie, crowbar, a homemade mask, and brown gloves were in the vehicle. The occupants were separated and interviewed. Smith said he was making a delivery to a supply company that the officer knew did not exist in the city. Smith could not produce a delivery invoice. The rear door of the business from which the van had left had been pried back. The van had been reported stolen. Smith and Lawrence were arrested. Smith was charged with attempted burglary of a building, unlawful use of a motor vehicle, and unlawful use of criminal instrument.

On September 7, 2010, Angel Hernandez, a driver delivering cigarettes, drinks, and snacks, stopped at a convenience store in Harris County. He opened the back of the truck and got inside to gather the items for delivery. A man, later identified by Hernandez as Smith, jumped into the back; the man had a taser. Smith told Hernandez to sit down and not look at him, and Smith began pushing boxes of cigarettes. Smith and another man loaded thirteen boxes in a van. Hernandez was able to see the van and its license plate. Smith was arrested, and a van similar to that described by Hernandez was later located at Smith's mother's residence. After obtaining consent to remove the van, law enforcement officials found a taser, packaging tape, and insurance papers in Smith's name.

The State presented evidence that Smith participated in thefts of cigarettes, each time with other accomplices and a similar *modus operandi*. The heists occurred over a five-month period and involved large quantities of cigarettes. Pipkins owned the house where the cigarettes from the April 6, 2010 robbery were recovered, and Kenneth Adams was arrested outside the home. From the evidence presented, the jury could reasonably conclude that the offenses Smith participated in were planned, that the perpetrators agreed to the continuous criminal activities, and that the perpetrators intended to share the profits from the criminal enterprise. The evidence is sufficient to support Smith's conviction for engaging in organized criminal activity to commit robbery and aggravated kidnapping. We overrule Smith's issue. The judgment is affirmed.

AFFIRMED.

_____
DAVID GAULTNEY
Justice

Submitted on June 21, 3013
Opinion Delivered October 16, 2013
Do Not Publish

Before McKeithen, C.J., Gaultney and Kreger, JJ.

7