**Opinion issued October 7, 2014**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00484-CR

———————————

**TRICIA RENE EVANS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 7**
**Harris County, Texas**
**Trial Court Case No. 1783495**

---

## MEMORANDUM OPINION

A jury found appellant, Tricia Rene Evans, guilty of the offense of assault of

a family member.[1] The trial court assessed her punishment at confinement for one

---

[1] *See* TEX. PENAL CODE ANN. § 22.01 (Vernon Supp. 2014); *see also* TEX. CODE CRIM. PROC. ANN. art. 42.013 (Vernon 2006); TEX. FAM. CODE ANN. § 71.003 (Vernon 2014); TEX. GOV'T CODE ANN. § 573.022 (Vernon 2012).

year, suspended the sentence, and placed her on community supervision for one year. In her sole issue, appellant contends that the evidence is legally insufficient to support her conviction.

We affirm.

## Background

The complainant, Addie Evans, testified that at approximately 1:30 a.m. on September 25, 2011, she received a telephone call from a Houston Police Department ("HPD") officer, asking her to pick up appellant, her daughter, at a street corner in downtown Houston. The officer informed the complainant that appellant appeared to be intoxicated, had been in an altercation, and did not know the location of her car. When the complainant arrived downtown, she noted that appellant appeared as if "someone had just left her downtown." She looked "drunk" and "beat up," had lost her wig and shoes, and had a "black eye."

During the approximately 45-minute drive to appellant's house, appellant studied her injured eye in the visor mirror of the complainant's car, and she expressed outrage and a desire to retaliate against those who had stranded her. Appellant grew progressively angrier, and when they arrived at appellant's house, she demanded to be taken to a friend's house to retrieve her car. The complainant refused, and when appellant went to get a spare key, the complainant left and returned to her apartment.

2

At approximately 3:00 a.m., appellant arrived at the complainant's apartment, "banging" on the front door and calling the complainant's telephone. Scared, the complainant called the apartment-complex security officer. After appellant "got quiet," the complainant, who stood on her couch to look out through her sliding-glass patio door, saw "feet coming across" the six- to eight-foot fence surrounding her back patio. The complainant then saw appellant climb down into the patio area, pick up a five-pound, wooden "spool," and "bang[] it" against the sliding-glass door. After several knocks, the glass shattered into the apartment and all over the complainant.

The complainant further testified that appellant then "came in like a lion" and they fell to the floor. The complainant tried to hold appellant down by sitting on her, while appellant's teen-age daughter, who had been staying with the complainant, called for emergency assistance. Appellant scratched, "claw[ed]," and bit the complainant. Appellant then pushed the complainant off of her "with all the force of a beast." The complainant thought that appellant was going to the door to leave, but she then "ball[ed] up a fist and hit" the complainant on the right side of her face. The complainant felt pain and later awoke on the floor. At some point, she felt appellant kick her on the right side of her stomach and her shoulder.

After help arrived, an ambulance took the complainant to a hospital. She noted that she had suffered scratches, a wound to her face, and a torn rotator cuff in

3

her shoulder that required surgery. Her eye was swollen and red, and she could not see. And the trial court admitted into evidence photographs of the complainant's injuries.

Wardell Brigham, a neighbor, testified that the complainant had telephoned him while appellant was attempting to break her glass door. When he arrived at the complainant's apartment, he saw appellant actively "trying to get toward her mother," and he physically restrained appellant until a police officer arrived. And HPD Officer D. Titus, who responded to the disturbance call, testified that the patio sliding-glass door was broken; there was blood and glass "all over" the floor of the complainant's apartment; the complainant "had black eyes, bruises, and scratches"; and appellant was intoxicated and uncooperative. And he noted that appellant's daughter had reported to him that she had witnessed appellant assaulting the complainant.

Appellant's teen-age daughter testified that after appellant had broken the door and come into the apartment, the complainant held her down while help was summoned. And she saw appellant get up and hit the complainant. The complainant then "fell back."

A neighbor, Gwendolyn White, testified that appellant had banged on the complainant's door with such force that she had dislodged a picture from White's

4

wall. White asked appellant why she was climbing over the complainant's fence. Appellant responded that the complainant had "stolen her kids."

Appellant testified that on the night of the altercation, she had left her children with the complainant to attend a party at a downtown hotel. During the party, someone drugged her; she "blacked out"; she was assaulted by another party-goer; her companions took her wig, shoes, keys, and cellular telephone, and abandoned her; and HPD officers found her. After the complainant dropped appellant off at her house, she walked to a friend's house and found her car. She then drove to the complainant's apartment because she wanted to be near her children. She admitted to having banged on the complainant's door, climbed up the stairs and over the patio fence, and hit the wooden spool against the glass door. She asserted, however, that she did not intend to break the glass, but only to draw her mother's attention; and, once she entered through the broken door, the complainant was the aggressor. Appellant denied that she had intended to hit the complainant, and she asserted that any strike she may have delivered during the struggle was an unintentional reaction to the complainant's aggression.

## Sufficiency of the Evidence

In her sole issue, appellant argues that the evidence is legally insufficient to support her conviction because she lacked the requisite culpable mental state to commit the offense of assault.

5

We review the legal sufficiency of the evidence by considering all of the evidence "in the light most favorable to the prosecution" to determine whether any "rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which she is accused. *Id*.

A person commits the offense of assault, as applicable here, if she intentionally or knowingly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon Supp. 2014). "Bodily injury" means "physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8) (Vernon Supp. 2014). A person acts intentionally, or with intent, with respect to a result of her conduct when it is her conscious objective or desire to cause the result. TEX. PENAL CODE ANN. § 6.03(a) (Vernon 2011). A person acts knowingly, or with knowledge, with

6

respect to a result of her conduct when she is aware that her conduct is reasonably certain to cause the result. *Id.* § 6.03(b).

A person's knowledge and intent may be inferred from her acts, words, and conduct, and the surrounding circumstances. *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *Moore v. State*, 969 S.W.2d 4, 10 (Tex. Crim. App. 1998) ("Mental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs."). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004); *see Laster v. State*, 275 S.W.3d 512, 524 (Tex. Crim. App. 2009) ("[O]ne's acts are generally reliable circumstantial evidence of one's intent.").

Here, the evidence shows, and appellant admitted, that she drove to the complainant's apartment at 3:00 a.m., banged on her front door, climbed up stairs and over a six- to eight-foot fence, and struck a glass door with a five-pound, wooden object. The complainant testified that when the glass shattered, appellant came in on top of her "like a lion." She noted that appellant scratched and "claw[ed]" at her, bit her, and then pushed her off "with all the force of a beast." When the complainant thought that appellant was going to leave, appellant then "ball[ed] up a fist and hit" her on the right side of her face. The complainant felt pain, fell to the floor, and lost consciousness. Appellant's daughter testified that

she saw appellant get up and hit the complainant, and she saw the complainant "f[a]ll back."

From this evidence, the jury could have reasonably found that appellant acted with intent to cause bodily injury, or acted with reasonable certainty that bodily harm would result, when she struck the complainant's face with her fist with such force that the complainant fell to the floor and lost consciousness. *See* TEX. PENAL CODE ANN. § 6.03; *Hart*, 89 S.W.3d at 64 (noting jury may infer existence of mental state from any facts tending to prove its existence, including acts, words, and conduct of accused); *see, e.g.*, *Fancher v. State*, No. 10-09-00121-CR, 2011 WL 1166657, at *3 (Tex. App.—Waco Mar. 30, 2011, pet. ref'd) (not designated for publication) (holding intent to cause bodily injury reasonably inferred from defendant having struck complainant in head); *Wilhite v. State*, No. 2-02-106-CR, 2003 WL 21666691, at *2–3 (Tex. App.—Fort Worth July 17, 2003, no pet.) (mem. op., not designated for publication) (holding evidence defendant "attacked" complainant by punching and kicking her sufficient to establish intent to cause bodily injury).

Although appellant testified that she did not intentionally hit the complainant and, at most, may have done so inadvertently *while* they struggled on the floor, appellant's daughter testified that she saw appellant hit the complainant *after* appellant "got up." Further, Brigham testified that when he entered the

8

apartment, appellant was still actively "trying to get toward her mother." The jury is the sole judge of the facts, the credibility of the witnesses, and the weight to be given the witnesses' testimony. *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007); *Davis v. State*, 177 S.W.3d 355, 358 (Tex. App.—Houston [1st Dist.] 2005, no pet.). Here, the jury could have reasonably chosen to believe the testimony of the complainant, appellant's daughter, and Brigham, which consistently painted appellant as the aggressor, over the version of events and defensive theory proffered by appellant.

Appellant asserts that the evidence shows only that she was angry with others earlier that evening and there is no evidence of her having directed any threatening words toward the complainant. Evidence of threatening language or gestures, however, is not required to prove a defendant's knowledge or intent. *Dobbins v. State*, 228 S.W.3d 761, 765 (Tex. App.—Houston [14th Dist.] 2007, pet. dism'd).

Appellant also argues that the evidence is insufficient because had she intended to cause bodily injury to the complainant, she could have used the wooden spool as a weapon. And she asserts that the evidence showing that she was able to resist physical restraint by Brigham and law enforcement officers after the altercation demonstrates that she had the ability to inflict more serious bodily injury than that which the complainant suffered. However, the fact that appellant

9

could have inflicted more damage upon the complainant does not negate the evidence of appellant's intent to cause the complainant injury.

Viewing all of the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have reasonably found that appellant intentionally or knowingly caused bodily injury to the complainant. Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction.

We overrule appellant's sole issue.

**Conclusion**

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Do not publish. TEX. R. APP. P. 47.2(b).