**AFFIRMED and Opinion Filed March 22, 2023**



**In The**

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

**No. 05-22-00146-CR**

_____

**CAMERON ANDREW MILLS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Criminal District Court No. 1**
**Dallas County, Texas**
**Trial Court Cause No. F-1946288-H**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Garcia
Opinion by Justice Reichek

Cameron Andrew Mills appeals his conviction for manslaughter in the death of Elias Lopreto. Appellant contends the evidence is legally insufficient to support his conviction because (1) the State did not prove he was reckless and (2) his use of deadly force was justified because he thought Lopreto was sexually assaulting him. We affirm.

## BACKGROUND

Appellant was indicted for Lopreto's murder. Lopreto was shot in the head at about 3:40 p.m. on December 10, 2019, in the parking lot of an apartment complex in Richardson, Texas. He died in the hospital a week later from the gunshot wound.

Appellant and Lopreto met through a social media application called Grindr, which is generally associated with male-on-male sexual encounters. They agreed to meet in person at a Jack in the Box restaurant. At about 3:30 p.m. on December 10, just minutes before the shooting, appellant and Lopreto each drove to the restaurant. Surveillance video showed that Lopreto got out of his car and into appellant's vehicle. They sat together in the parking lot for about two minutes and then both drove off in appellant's car. They went to a nearby apartment complex.

A 911 call about the shooting was made at about 3:42 p.m. A witness in the apartment complex parking lot heard one gunshot and saw a car speed off right after the shot.

Appellant was developed as a suspect after police received information from his father. Appellant was arrested near his stepfather's apartment in Dallas two days after the shooting. Information extracted from appellant's cell phone showed he installed Grindr on his phone on the afternoon of December 6, 2019. It was uninstalled and then reinstalled three times between December 7 and December 10. Then at 3:49 p.m. on December 10, 2019, right after the shooting, Grindr was

uninstalled and never reinstalled. No Grindr messages were recovered during the cell phone extraction because the app was uninstalled.

Police were able to extract messages from the Snapchat application on appellant's phone. At 2:52 p.m. on December 10, 2019, less than an hour before Lopreto was shot, appellant sent the following message to an unknown recipient: "Aye aye who wants inn on a jugg and gotta strap rn rn p pay." A few seconds later, he sent the word "play," possibly correcting a typo in the previous message. Richardson Police Sergeant Kelly Pagel testified the term "jug" has something to do with robbery and the term "strap" usually refers to a firearm.

Appellant's girlfriend, Esmeralda Luciano, testified appellant was driving her car on the day of the offense. She sent appellant a message through Snapchat at 3:06 p.m. asking him to pick up her little brother Junior. At 3:07 p.m., appellant responded, "I ain't picking Jr up I'm still waiting on my step dad and jug." When appellant picked Luciano up from work, sometime after 5 p.m., he was nervous, pale, and shaky. He made some phone calls from the car but it sounded like he was talking in code. Then at 5:39 p.m. on December 10, appellant sent a message to Luciano asking her not to give up on him and saying he would be back in a couple of days. He promised her that "if this blows over I'm changed asf."

Dr. Stephanie Burton performed an autopsy on Lopreto. She testified that the presence of soot in the gunshot wound indicated he was shot at very close range. He also had a laceration to his right eyebrow, abrasions on his right cheek and right

–3–

temporal scalp, contusions on both legs, and injuries to his abdomen. Burton testified these injuries were consistent with a fall after being shot or with a physical altercation.

Appellant testified in his defense and denied that he planned to rob Lopreto. He was 23 years' old at the time of trial. He dropped out of school after the 7th grade. When he was 18, he started working security and later became qualified to "do armed security." He was eventually laid off. In 2019, he was selling marijuana. He got the Grindr app as a way to earn money. He hid the app from Luciano because he did not want her to know about it.

Appellant's meeting with Lopreto was his first in-person meet up through Grindr. Lopreto "hit [appellant] up wanting to do a meet-up." They agreed to meet at Jack in the Box and planned for Lopreto to give appellant oral sex for $100. Lopreto chose the apartment complex nearby to be more discreet. Appellant estimated Lopreto was in his mid-30s. Appellant said their conversation started out friendly but turned weird. Lopreto wanted to do more than they had agreed on, which made appellant uncomfortable. Lopreto proposed anal sex, and appellant told him that was out of the question. A few times Lopreto referred to "we," suggesting someone else was coming. When appellant confronted him about that, Lopreto tried to backtrack. Lopreto became angry when appellant pulled out his phone to check his notifications. He asked appellant who he was texting or calling and grabbed appellant's wrist. As appellant moved to put his phone away, he felt a pulling on his

—4—

crotch area. Appellant and Lopreto got into a physical altercation, and Lopreto climbed on top of appellant. Appellant punched Lopreto more than once. Once appellant got Lopreto off of him and back on the passenger side of the car, appellant pulled out a loaded gun, which had been in his pocket. He told Lopreto to get out of the car, but Lopreto kept fighting with him. Appellant had the gun in his right hand on the headrest and fought Lopreto with his left hand. When Lopreto was partially out of the car, with one foot on the ground, appellant took his hand off the headrest and pushed, trying to get Lopreto out of the car. The gun was in between appellant's hands as he pushed the backside of Lopreto's left shoulder. The gun discharged, and Lopreto was shot in the back of the head.

Appellant testified he was scared and panicked and left the scene without doing anything to help Lopreto. He got rid of a hat and hoodie he was wearing and went to a friend's house for a few minutes. He picked Luciano up from work, and she dropped him back off at his friend's house. He stayed there for several hours and then got a ride to a motel in Dallas where he spent the night. He checked out of the motel the next morning and walked to meet his stepfather nearby. On the way, he put his gun in a dumpster.

After his arrest, appellant spoke to the police. He testified he told them the same version of the events. Appellant testified he did not intend to rob Lopreto and he acted in self-defense during the incident. He claimed he was about to turn himself in when police arrested him in Dallas.

The jury charge included instructions on the lesser included offenses of manslaughter and criminally negligent homicide. The trial court also instructed the jury on the use of deadly force in self-defense. The jury found appellant guilty of manslaughter and assessed his punishment at fifteen years' confinement. This appeal followed.

In his first issue, appellant asserts the evidence is legally insufficient to support his conviction. Appellant contends the State failed to put on sufficient evidence of recklessness. Appellant also argues he was justified in using deadly force against Lopreto because appellant believed he was being sexually assaulted. In an alternative second issue, appellant asks the Court to acquit him of manslaughter, convict him of criminally negligent homicide, and remand for a new trial on punishment. He again argues the evidence is insufficient to show recklessness and contends that at most, he was criminally negligent.

## APPLICABLE LAW

To prove manslaughter, the evidence must prove the defendant recklessly caused the death of an individual. TEX. PENAL CODE ANN. § 19.04; *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013). A person acts recklessly when he is aware of but consciously disregards a substantial and unjustifiable risk. TEX. PENAL CODE ANN. § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.*

–6–

Manslaughter is a result-oriented offense:  the mental state must relate to the results of the defendant's actions.  *Britain*, 412 S.W.3d at 520.

Direct evidence of the requisite culpable mental state is not required.  *Herrera v. State*, 526 S.W.3d 800, 809 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (citing *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002)). *Mens rea* is almost always proven through circumstantial evidence.  *Id.*  A jury may infer intent from the acts, words, and conduct of the accused, as well as from the extent of the injuries and the relative size and strength of the parties.  *Id.*

The penal code does not require that a defendant intend the death of an attacker to be justified in using deadly force in self-defense; a defendant can raise the justification of self-defense to manslaughter.  *Alonzo v. State*, 353 S.W.3d 778, 783 (Tex. Crim. App. 2011).  However, a fact finder cannot find that a defendant acted recklessly and in self-defense.  *Id.* at 782.

A person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force.  TEX. PENAL CODE ANN. § 9.31(a).  Deadly force in self-defense is justified when a person reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful deadly force or to prevent the other's imminent commission of aggravated kidnapping, murder, sexual assault, aggravated sexual assault, robbery, or aggravated robbery.  *Id.* § 9.32(a)(2).

The defendant bears the burden to produce evidence of self-defense, while the State bears the burden of persuasion to disprove the raised issues. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018) (citing *Saxton v. State*, 804 S.W.2d 910, 913–14 (Tex. Crim. App. 1991)). In resolving the sufficiency of the evidence issue, we look not to whether the State presented evidence which refuted appellant's self-defense testimony, but rather we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found the essential elements of the offense beyond a reasonable doubt and would have found against appellant on the self-defense issue beyond a reasonable doubt. *Id.* Defensive evidence which is merely consistent with the physical evidence at the scene of the alleged offense will not render the State's evidence insufficient since the credibility determination of such evidence is solely within the jury's province and the jury is free to accept or reject the defensive evidence. *Id.*

## ANALYSIS

The evidence supports the jury's findings that appellant acted recklessly and not in self-defense. Appellant himself testified on cross-examination that the shooting was an accident. Courts have upheld jury findings that a defendant consciously disregarded a substantial and unjustifiable risk in numerous situations involving the allegedly accidental discharge of a firearm. *Gahagan v. State*, 242 S.W.3d 80, 86 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd) (collecting cases).

Here, there was evidence that appellant, who had worked in security and knew how to handle and load guns, held a loaded gun at Lopreto's back at close range. From the evidence, the jury could have rationally inferred that appellant was aware of the risk created by that conduct and disregarded the risk. *See id.* at 87. Further, the jury was free to disbelieve appellant's testimony that Lopreto sexually assaulted him. It could have instead credited the State's evidence that appellant met Lopreto in order to "jug" or rob him. In addition, appellant's actions after the shooting show a consciousness of guilt and support the rejection of his claim of self-defense. He sped away from the scene, disposed of his clothing and the gun, deleted Grindr from his phone, and told his girlfriend he would change "if this blows over." *See Barron v. State*, 630 S.W.3d 393, 405 (Tex. App.—Eastland 2021, pet. ref'd) (efforts to clean up and tamper with crime scene show consciousness of guilt). Viewing all the evidence in the light most favorable to the prosecution, the jury could have rationally found the essential elements of manslaughter beyond a reasonable doubt and also have found against appellant on the issue of self-defense. We overrule issues one and two.

We affirm the trial court's judgment.

/Amanda L. Reichek/  
AMANDA L. REICHEK  
JUSTICE

Do Not Publish  
TEX. R. APP. P. 47.2(b).  
220146F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CAMERON ANDREW MILLS, Appellant

No. 05-22-00146-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court No. 1, Dallas County, Texas Trial Court Cause No. F-1946288-H. Opinion delivered by Justice Reichek. Justices Nowell and Garcia participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 22nd day of March, 2023.