**Opinion issued February 13, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00185-CR

————————————

## HILARIO SOLIZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

---

### On Appeal from the 338th District Court
### Harris County, Texas
### Trial Court Case No. 1339083

---

### MEMORANDUM OPINION

A jury convicted appellant, Hilario Soliz, of the first-degree felony offense

of murder, and the trial court assessed punishment at fifty years' confinement.[1]  In

---

[1]     *See* TEX. PENAL CODE ANN. § 19.02(b)(1)–(2) (Vernon 2011).

his sole issue, appellant contends that the State failed to present sufficient evidence that he possessed the requisite culpable mental state for the offense of murder.

We affirm.

## Background

Around 5:15 a.m. on March 2, 2012, appellant called 9-1-1 and reported that he had stabbed his partner, Ronnie Howell, the complainant. The 9-1-1 dispatcher instructed appellant on how to perform CPR, and appellant attempted to revive Howell. Houston Police Department officers and Houston Fire Department paramedics arrived at appellant and Howell's apartment approximately five minutes after receiving the dispatch. Appellant, who was dressed only in his underwear, immediately answered the door. He had small patches of dried blood on his body, and he was still on the phone with 9-1-1. The responding officers all testified that appellant appeared distraught and in shock. Appellant admitted to the officers present at the scene that he had been holding a knife and that Howell "ran into the knife." He also stated that the stabbing occurred approximately one hour before the officers arrived at the apartment. The paramedics were unable to revive Howell, who was pronounced dead at the scene.

The officers arrested appellant and took him to the Homicide Division office, where he gave a recorded statement to Sergeant J. Harvey. All of the officers characterized appellant's behavior as cooperative. In the interview,

2

appellant stated that he and Ronnie had gone out to a restaurant and a bar the night before. Appellant left the bar without Howell and returned home. Howell did not come back to the apartment until around 1:00 a.m., and when he did return, Howell and appellant started arguing. Appellant stated that the argument escalated to a physical altercation, with Howell swinging at him in their kitchen. At some point during the confrontation, appellant grabbed a knife to defend himself, and, although he was not sure how it happened, Howell ended up with a stab wound. Appellant then called 9-1-1 and tried to administer CPR. Later in the interview, Sergeant Harvey confronted appellant with the fact that Howell had multiple stab wounds. This time, appellant stated that he held two knives, and as Howell punched him in the face, Howell came towards him and ended up stabbed. The trial court admitted a recording of this interview into evidence.

Sergeant Harvey also testified concerning several photographs that officers took of appellant after the interview to document any injuries that appellant had. Appellant had only minor injuries at the time, including a small mark just below his left eyebrow, a small bruise "of unknown age" on his jaw, an abrasion on his upper chest, and a small cut on one of his knuckles.

While searching appellant's apartment, Officer L. Verbitskey recovered an "8-inch large steel butcher knife" from the kitchen. This knife had blood smears on the blade as well as on the handle. The knife was part of a set, and Officer

3

Verbitskey testified that, based on the configuration of the block of knives, the particular knife used in the stabbing "wouldn't be the easiest one" to access and use in a hurry. Officer Verbitskey took photographs of the kitchen, which revealed blood on the cupboards, under the sink, and on the floor, consistent with blood drops "striking the cupboards and draining down." Officer Verbitskey concluded that the stabbing occurred in the kitchen. Aside from the fact that the kitchen rug was slightly askew, Officer Verbitskey did not observe any signs that a struggle between appellant and Howell had occurred in the kitchen or anywhere else in the apartment. Officers also observed "a lot of blood on the floor" of the apartment as well as a few blood soaked towels and "pooled blood" in the bathroom, indicating that, at some point, Howell stood in the bathroom after being stabbed. Officer Verbitskey agreed with defense counsel that there was no indication that appellant had tried to clean up the scene before police arrived.

Dr. Roger Milton, an assistant medical examiner at the Harris County Institute of Forensic Sciences, performed the autopsy on Howell. In addition to some minor wounds to the top of his head, his cheek, and the front of his neck, Howell had an "11-inch cutting wound to the left chest and abdomen." Howell also had a penetrating stab wound to his right upper abdomen and a penetrating stab wound to his lower left abdomen, and autopsy photographs revealed that these wounds were not located near each other. Each of the stab wounds was

4

approximately six inches deep, indicating that "6 inches of the [8-inch] blade actually penetrated the body." The wound to the upper abdomen lacerated Howell's liver, and Dr. Milton concluded from the appearance of the cut on the liver that the knife did not go straight into Howell's body and then straight out. Dr. Milton testified that neither stab wound was immediately fatal and that Howell died of internal bleeding.

Dr. Milton also testified that while it was possible for someone to receive a stab wound from walking into a blade, due to the depth of Howell's stab wounds, "there would have to be some resistance there" for him to impale himself six inches on a blade. He stated, "So [a victim] walking into a knife that is in a loosely-held arm that is able to or willing to withdraw, it wouldn't occur." He further stated that the probability of two injuries occurring "in that same mechanism" is "highly unlikely." He testified that someone impaling himself twice is even more unlikely than someone impaling himself once. Dr. Milton also observed no abrasions or lacerations on Howell's knuckles or any torn fingernails consistent with his punching appellant or otherwise engaging in a "violent physical confrontation" with his hands. He stated that there was no scientific or physical evidence to support the theory that a physical struggle occurred just before Howell's death. Dr. Milton also observed the photographs of appellant taken after

5

his interview, and he testified that he did not observe any injuries consistent with his being punched.

The jury convicted appellant of the offense of murder, and the trial court assessed punishment at fifty years' confinement.  This appeal followed.

## Sufficiency of Evidence

In his sole issue, appellant contends that the State failed to present sufficient evidence that he possessed the requisite culpable mental state for the offense of murder.

### A.    *Standard of Review*

When reviewing the sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational fact finder could have found the essential elements of the offense beyond a reasonable doubt.  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011) (holding that *Jackson* standard is only standard to use when determining sufficiency of evidence).  The jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony.  *Bartlett v. State*, 270 S.W.3d 147, 150 (Tex. Crim. App. 2008).  A jury may accept one version of the facts and reject another, and it may reject any part of a witness's testimony.  *See Sharp v. State*, 707 S.W.3d 611, 614 (Tex. Crim. App. 1986); *see also Henderson*

6

*v. State*, 29 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (stating jury can choose to disbelieve witness even when witness's testimony is uncontradicted). We may not re-evaluate the weight and credibility of the evidence or substitute our judgment for that of the fact finder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We afford almost complete deference to the jury's credibility determinations. *See Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We resolve any inconsistencies in the evidence in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000); *see also Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) ("When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination.").

### B.   *Murder*

To establish that appellant committed the offense of murder, the State had to prove that appellant either (1) intentionally or knowingly caused Howell's death by stabbing him with a deadly weapon, a knife, or (2) intended to cause serious bodily injury and committed an act clearly dangerous to human life, specifically, stabbing Howell with a deadly weapon, that caused his death. *See* TEX. PENAL CODE ANN. § 19.02(b)(1)–(2) (Vernon 2011). When the charge authorizes the jury to convict on more than one theory, as it did in this case, we will uphold the verdict if the

7

evidence is sufficient on any of the theories presented. *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007).

A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. TEX. PENAL CODE ANN. § 6.03(a) (Vernon 2011). A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. *Id.* § 6.03(b). A person acts knowingly, or with knowledge, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* Direct evidence of the requisite culpable mental state is not required. *See Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002); *Tottenham v. State*, 285 S.W.3d 19, 28 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd) ("[P]roof of a culpable mental state almost invariably depends on circumstantial evidence."). A defendant's culpable mental state can be inferred from his acts, words, and conduct. *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995); *see also Hart*, 89 S.W.3d at 64 (stating that intent and knowledge can be inferred from "any facts which tend to prove its existence, including the acts, words, and conduct of the accused, and the method of committing the crime and from the nature of the

8

wounds inflicted on the victims") (quoting *Manrique v. State*, 994 S.W.2d 640, 649 (Tex. Crim. App. 1999)).

The jury may infer intent or knowledge from the use of a deadly weapon during the commission of the offense. *See Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003) (stating that jury may infer intent to kill from use of deadly weapon); *Dominguez v. State*, 125 S.W.3d 755, 761 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd); *see also Jones v. State*, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996) (noting that, in some circumstances, it may not be reasonable to infer that death or serious bodily injury could result from use of particular weapon). When the evidence demonstrates that a deadly weapon was used in a deadly manner, the inference that the defendant intended to kill is almost conclusive. *Pitonyak v. State*, 253 S.W.3d 834, 844 (Tex. App.—Austin 2008, pet. ref'd) (quoting *Godsey v. State*, 719 S.W.2d 578, 581 (Tex. Crim. App. 1986)). Intent may also be inferred from the extent of the complainant's injuries. *Patrick*, 906 S.W.2d at 487.

Appellant admitted that he stabbed Howell, although he argues that he did so in self-defense after Howell attacked him and that the State presented no evidence that he "ever wanted to seriously hurt or kill Howell." He specifically points to the fact that he and Howell were in a committed, loving relationship as evidence of his lack of the requisite culpable mental state. He also points to his recorded statement

9

to police, in which he stated that he pointed the knife at Howell in an effort to fend off Howell's physical attacks and that Howell somehow ended up with a stab wound to his stomach during the confrontation.

The State presented evidence that appellant used a butcher knife with an eight-inch blade to stab Howell. In addition to an 11-inch "cutting wound" across his chest and abdomen, Howell had two six-inch-deep stab wounds, one to his right upper abdomen and one to his left lower abdomen. Autopsy photographs demonstrated that these stab wounds were not located near each other. Dr. Milton, the assistant medical examiner, testified that it was "highly unlikely" that Howell twice walked into the knife's blade and impaled himself. He further testified that the depth of the stab wounds indicated the presence of resistance in the form of appellant's holding the knife tightly, instead of in a loose grip. Dr. Milton stated that Howell did not have any injuries on his hands consistent with his punching appellant and that appellant, in the photographs taken after his interview with Sergeant Harvey, did not display any injuries consistent with being punched.

The trial court admitted a recording of appellant's interview with Sergeant Harvey. During this interview, appellant admitted to stabbing Howell, although he also stated that he had grabbed a knife in an attempt to defend himself from Howell who was "swinging" at him, and, somehow, Howell moved forward towards appellant and was stabbed in the stomach. When Sergeant Harvey later asked how

Howell managed to receive two stab wounds, appellant stated that during the altercation he grabbed two knives, and Howell was injured as he came towards appellant. Officers did not observe any signs of a struggle in the apartment, and they also agreed that there was no evidence that appellant tried to clean up or conceal evidence after the stabbing. Officers recovered only one knife with blood on it from the scene.

Appellant's primary defense at trial was that he stabbed Howell in self-defense, a defense that the jury plainly rejected, as it was entitled to do. *See Bartlett*, 270 S.W.3d at 150 (stating that jury is exclusive judge of facts, credibility of witnesses, and weight to be given to testimony); *Sharp*, 707 S.W.2d at 614 (stating that jury may accept one version of facts and reject another and that jury may disbelieve any part of witness's testimony). Moreover, from appellant's use of a deadly weapon in a deadly manner, the jury could have reasonably inferred that, at the least, appellant intended to cause Howell serious bodily injury. *See Brown*, 122 S.W.3d at 800; *Pitonyak*, 253 S.W.3d at 844; *Dominguez*, 125 S.W.3d at 761. Likewise, the jury could have inferred that appellant intended at least to cause Howell serious bodily injury from the fact that Howell had two six-inch-deep stab wounds to different parts of his abdomen. *See Patrick*, 906 S.W.2d at 487 (holding that intent can be inferred from extent of complainant's injuries).

Viewing the evidence in the light most favorable to the verdict, as we must when conducting a sufficiency of evidence review, we conclude that a rational jury could have found beyond a reasonable doubt that appellant had the requisite culpable mental state for the offense of murder.

We overrule appellant's sole issue.[2]

## Conclusion

We affirm the judgment of the trial court.


Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Bland, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).

---

[2] In arguing that the State failed to present sufficient evidence of intent, appellant argues that there was no evidence that Howell's death was planned or premeditated and that there was no evidence of motive. We note that "motive is not an element of murder," and thus the State need not prove that appellant had a motive in order to support the conviction. *See Clayton v. State*, 235 S.W.3d 772, 781 (Tex. Crim. App. 2007); *Delacruz v. State*, 278 S.W.3d 483, 491 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). Similarly, premeditation is also not an element of murder. *See Crane v. State*, 786 S.W.2d 338, 345 (Tex. Crim. App. 1990) (holding that veniremember who would require State to prove premeditation is "properly excused" for cause).