

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-23-00021-CR

_____

JUANA MARQUEZ,

                                                  **Appellant**

 v.

THE STATE OF TEXAS,

                                                  **Appellee**

_____

## From the County Court at Law
## Navarro County, Texas
## Trial Court No. C41633-CR

_____

## MEMORANDUM OPINION

_____

Juana Marquez appeals from a conviction for the offense of manslaughter.[1] TEX. PENAL CODE § 19.04. Marquez complains that the evidence was insufficient for the jury to have found that she recklessly caused the death of the child and that the trial court

---

[1] Marquez was tried for murder and injury to a child. The State abandoned the injury to a child charge shortly before the end of the trial. Marquez was found guilty of the lesser-included offense of manslaughter.

abused its discretion in the admission of evidence relating to bruising on the child's siblings and that Marquez had hit the child's six-year-old brother. Because we find no reversible error, we affirm the judgment of the trial court.

## SUFFICIENCY OF THE EVIDENCE

In her first issue, Marquez complains that the evidence was insufficient for the jury to have found that she recklessly caused the death of Amberly,[2] a four-year-old child, by either causing boiling water to make contact with her skin or by administering Tramadol to the child. The Court of Criminal Appeals has expressed our standard of review of sufficiency issues as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (*citing Jackson*,

---

[2] Amberly was Marquez's paramour's child. Amberly's older brother and next youngest brother were also Marquez's paramour's children. The three siblings had been placed in the home by CPS in Arizona. Marquez's paramour was working out of state when Amberly died. The youngest child in the home was the child of Marquez and her paramour.

443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732-33 (Tex. Crim. App. 2018).

Marquez was indicted and tried for the offense of murder but was convicted of the lesser-included offense of manslaughter. A person commits manslaughter "if [s]he recklessly causes the death of an individual." TEX. PENAL CODE § 19.04. For purposes of manslaughter, one "acts recklessly, or is reckless, with respect to . . . the result of h[er] conduct when [s]he is aware of but consciously disregards a substantial and unjustifiable risk that . . . the result will occur." TEX. PENAL CODE § 6.03(c).

## FACTS

Marquez called 9-1-1 to report that she had discovered that Amberly, her paramour's four-year-old child, was deceased. Marquez told the dispatcher that the child was not waking up or breathing and that the child had dumped boiling water on herself the night before. Law enforcement arrived at the residence after some confusion as to the address and discovered Amberly's body wrapped in a blanket with significant burns on her upper body. An autopsy established that Amberly had died from the untreated burns as well as from Tramadol which was found in her system. The burns covered 45 percent of Amberly's body but were limited to her upper body, including her face, scalp, ears, chest, upper arms, upper to mid-back, hands, and fingers.

During the immediate investigation, Marquez was questioned about what had happened. Marquez told an officer that she had four children, including Amberly, in her care at the time of the injury. Marquez stated that around 8:30 p.m., she was in the bathroom giving a bath to the two younger children, ages 3 and 1, when she heard Amberly screaming in the kitchen. When Marquez ran to check on Amberly, she contended that she found that Amberly had pulled a pot of boiling water off the stove and poured it onto her head and upper body. Marquez had put the pot on the stove to boil in order to cook a pot of beans. Marquez told the officer that there was no cleanup required because all of the water went onto Amberly, not on the floor. Marquez stated that she put Amberly in the tub to try and cool her off, then dried her and applied aloe

vera and Noxzema to the burns. Marquez gave milk to Amberly because she was thirsty and put her in Marquez's bed at 10:00-10:30 p.m. Marquez told the officer that Amberly had gotten up sometime during the night and left the bedroom, but Marquez did not check on her during the night. Marquez stated that she went to bed around 11:00 and got up when the youngest child woke her and she discovered Amberly at that time. Marquez told the officer that she did not seek medical attention for Amberly the night she was injured because Marquez had the other children in the home.

The investigating officers checked the stove and the floor around it for signs that water had been spilled but did not find any evidence that there had been a spill recently based on the grease and debris on the stove and the dust under the stove which were undisturbed. There was also no indication that the gown that Amberly had been wearing had gotten wet.

Experts for both the State and the defense conducted multiple demonstrations attempting to establish the cause of the burns to Amberly. Amberly was 42 inches tall and weighed 30 pounds when she died.

Other medical experts for the State and defense gave their opinions as to how the burns could have happened. The autopsy examiner ruled that the cause of death was homicide due to the failure to seek medical care and the ingestion of Tramadol, a drug which is not indicated for use in children in the United States and had not been prescribed to Amberly. However, the autopsy stated that the burn injuries were accidental because

the burns were consistent with the story as presented to the autopsy examiner. A second expert for the State, a medical director at Parkland Hospital in Dallas, opined that it would have been very difficult for Amberly to pick up the pot and pour water over her entire head because her head was 2-3" taller than the stove and she likely would have burned her hands trying to pick up the pot. That expert testified that the injuries were more likely caused while Amberly was in the bathtub because there were no burns on her lower extremities as would be expected if water was poured in the manner Marquez claimed.

Amberly's older brother, who was six at the time of her death and nine at the time of trial, discovered Amberly's body the next morning. He testified that he was in the house the night that Amberly was injured and heard her crying. He testified that he tried to find her and looked throughout the house everywhere except the bathroom. He gave some different explanations of what had happened, such as Amberly turning the hot water on in the bathtub. He had told someone that there was water on the floor in the kitchen, but he denied that at trial. He also testified that Marquez was mean to him and his siblings, and he tried to protect them from Marquez when they were put in time out. Time out was not sitting in a corner, according to Amberly's brother, but involved getting hit.

A CPS worker testified that she was concerned because of various bruises, scars, and marks on the children, and photographs were admitted into evidence of Amberly's

siblings. Amberly's older brother testified that a bruise on a photograph taken on his right thigh was from Marquez hitting him. He had also told his adoptive mother that Marquez hit him when he was in trouble.

During her case-in-chief, Marquez attempted to establish that Amberly's older brother had a reputation for being untruthful and that Marquez was a good caregiver to the children and other children.

## ANALYSIS

In order to find Marquez guilty of the lesser-included offense manslaughter as charged in the indictment, the jury was required to find that Marquez caused Amberly's death by either causing a hot liquid to contact Amberly's body or administering a toxic dose of Tramadol to Amberly and that it was done recklessly. There was competing evidence presented regarding how Amberly was burned and as to how the Tramadol found in Amberly's system might or might not have been a toxic dose.

Marquez further argues that the evidence was insufficient for the jury to have found that she recklessly caused Amberly's death when the jury had rejected the greater offense of murder. To find Marquez guilty of murder, the jury was required to find that Marquez intended to cause serious bodily injury to Amberly, defined in the jury charge as "the person's conscious objective or desire to cause the serious bodily injury to another," which caused Amberly's death. The jury found Marquez not guilty of murder, and next was required to consider the offense of manslaughter.

In order for the jury to find that Marquez was guilty of manslaughter, the evidence must be sufficient to prove that Marquez recklessly caused Amberly's death. TEX. PENAL CODE § 19.04; *Britain v. State*, 412 S.W.3d 518, 520 (Tex. Crim. App. 2013). A person acts recklessly when she is aware of but consciously disregards a substantial and unjustifiable risk. TEX. PENAL CODE § 6.03(c). The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint. *Id.* Manslaughter is a result-oriented offense: the mental state must relate to the results of Marquez's alleged actions. *Britain*, 412 S.W.3d at 520.

Direct evidence of the requisite culpable mental state is not required. *Herrera v. State*, 526 S.W.3d 800, 809 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd) (*citing Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002)). *Mens rea* is almost always proven through circumstantial evidence. *Id.* A jury may infer intent from the acts, words, and conduct of the accused, as well as from the extent of the injuries and the relative size and strength of the parties. *Id.*

We disagree with Marquez's assertion that, with the quantum of evidence presented to it, the jury could not have determined that Marquez poured the water onto Amberly while in the bathtub without the specific intent to cause her serious bodily injury but in a manner that was reckless. Marquez's actions and inaction after Amberly was injured by the water supports the jury's finding of recklessness. These actions included

giving Amberly Tramadol, a prescription medication that was not prescribed to Amberly or indicated for use in children in the United States which was determined to be a factor in Amberly's death, instead of seeking medical attention for what was testified to as likely very painful injuries. The jury could reasonably have determined that Marquez did not intend to cause Amberly serious bodily injury but recklessly did so. In summary, there were theories or scenarios presented to the jury that would support a verdict of Marquez having recklessly caused Amberly's death. It was the jury's unenviable task to sort through the evidence and determine whether the cause of Amberly's death was the intentional, reckless, or criminally negligent conduct of Marquez, and the jury determined that Marquez recklessly caused Amberly's death.

Consistent with the applicable standard of review, we have reviewed the evidence in the light most favorable to the jury's verdict. Irrespective of the competing interpretations of the evidence offered by Marquez, and giving the appropriate deference to the jury's determinations, we hold that the record before us contains sufficient evidence from which a rational jury could have logically inferred and found beyond a reasonable doubt that Marquez recklessly caused Amberly's death. We overrule Marquez's first issue.

## ADMISSION OF EVIDENCE

In her second issue, Marquez complains that the trial court abused its discretion in the admission of evidence relating to alleged injury to the other children in Marquez's

home because it was not relevant, not admissible as extraneous conduct, and its probative value was substantially outweighed by unfair prejudice.

## STANDARD OF REVIEW

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Rhomer v. State*, 569 S.W.3d 664, 669 (Tex. Crim. App. 2019). The trial court's decision will be upheld as long as it was within the "zone of reasonable disagreement." *Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018). We will not reverse a trial court's evidentiary ruling, even if the trial court's reasoning is flawed, if it is correct on any theory of law that finds support in the record and is applicable to the case. *Henley v. State*, 493 S.W.3d 77, 82-83 (Tex. Crim. App. 2016).

## RELEVANCE

Marquez complains that evidence of various scratches and bruises on the other children in the home that were admitted through photographs and testimony as signs of Marquez's abusive behavior toward the children was not relevant pursuant to Rule 401 of the Rules of Evidence. In the single paragraph in the appellant's brief relating specifically to Rule 401, Marquez does not cite to any authority to support her contention and only includes an unsupported, slightly mischaracterized paraphrase of part of Rule 401 ("Under Rule 401, evidence is admissible if it tends to prove or disprove an essential element.").

An appellant's brief "must contain a clear and concise argument for the contentions

made, with appropriate citations to authorities and to the record." Tᴇx. R. Aᴘᴘ. P. 38.1(i). Further, an issue on appeal is waived if the appellant's brief does not adequately brief that issue by presenting supporting arguments, substantive analysis, and citation to authorities and the record. *See id.*; *Lucio v. State*, 351 S.W.3d 878, 896-97 (Tex. Crim. App. 2011); *see also Wyatt v. State*, 23 S.W.3d 18, 23 n.5 (Tex. Crim. App. 2000) ("We will not make [defendant]'s arguments for him . . . ."). Marquez's complaints as to Rule 401 are inadequately briefed and therefore, waived.

**Pʀᴏʙᴀᴛɪᴠᴇ Vᴀʟᴜᴇ**

Marquez also complains that the evidence should not have been admissible pursuant to Rule 403 of the Rules of Evidence. In support of this issue, Marquez includes two sentences in her brief and a brief quote from a case relating to the standard of review on this issue. Marquez's complaints as to Rule 403 are likewise inadequately briefed and therefore, waived. *See* Tᴇx. R. Aᴘᴘ. P. 38.1(i).

**Eхᴛʀᴀɴᴇᴏᴜs Cᴏɴᴅᴜᴄᴛ**

Marquez further complains that the evidence was not admissible pursuant to Rule of Evidence 404(b) because it was merely evidence of her alleged character for bad acts.[3] Rule 404(b) precludes the admission of evidence of a crime, wrong, or act solely to prove a person's character to show that he acted in conformity with that character on a

---

[3] Marquez does not separate out complaints specifically as to any one claim of injury to the other children but argues them in total; therefore, we will address this issue in the same manner.

particular occasion.  TEX. R. EVID. 404(b)(1).  Rule 404(b)(2) allows for such evidence to be admitted for other purposes, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  TEX. R. EVID. 404(b)(2).

The purposes listed in Rule 404(b)(2) "are neither mutually exclusive nor collectively exhaustive."  *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009). Indeed, extraneous evidence may also be introduced to rebut a defensive theory.  *Robbins v. State*, 88 S.W.3d 256, 259 (Tex. Crim. App. 2002); *Richardson v. State*, 328 S.W.3d 61, 71 (Tex. App.—Fort Worth 2010, pet. ref'd) (per curiam).  Thus, while Rule 404(b) limits character evidence, it is nevertheless a rule of inclusion.  *De La Paz*, 279 S.W.3d at 343.

A CPS investigator testified to bruises and scratches observed on Amberly's older brother and younger brother shortly after Amberly's death and photographs of the alleged injuries were admitted into evidence.  Photos of Amberly also showed bruises on her back.  Amberly's older brother told the CPS investigator that one of the bruises on his leg shown in a photograph was where Marquez had hit him.  He also told her and testified at trial that the children were disciplined by going to "time out" which meant getting hit for him and Amberly and that Marquez was "mean" to the children.  At the time of the introduction of the evidence, the State was attempting to prove two offenses, murder and injury to a child.  The State voluntarily abandoned the injury to a child charge near the end of the trial.

At trial, the State argued that the evidence showed lack of accident.  The injury to

a child charge as indicted required the State to prove that Marquez, acting as a parent, had failed to supervise Amberly which resulted in her injuries or that Marquez failed to seek medical care for Amberly. The murder charge required the State to prove that Marquez intentionally caused serious bodily injury to Amberly. The admission of evidence relating to the treatment of the other children in the home by Marquez was admissible to show a lack of accident relating to the injury to a child charge in the manner in which Amberly was alleged to have been injured at the time the evidence was admitted. We overrule Marquez's second issue.

CONCLUSION

Having found no reversible error, we affirm the judgment of the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
    Justice Johnson, and
    Justice Smith
Affirmed
Opinion delivered and filed July 11, 2024
Do not publish
[CRPM]

