Opinion filed July 25, 2024



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00289-CR

_____

**CHRISTOPHER CULLEN WEEKES, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 266th District Court**
**Erath County, Texas**
**Trial Court Cause No. CR15656**

## M E M O R A N D U M   O P I N I O N

The jury found Appellant, Christopher Cullen Weekes, guilty of burglary of a habitation with intent to commit assault. *See* TEX. PENAL CODE ANN. § 30.02(a)(1) (West 2019). The jury also found that the two prior convictions alleged by the State for enhancement purposes were true. The jury assessed Appellant's punishment at confinement for a term of fifty-three years in the Institutional Division of the Texas Department of Criminal Justice.

In two issues, Appellant asserts that the evidence was insufficient to support the jury's verdict and that he received ineffective assistance of counsel because his trial attorney did not request a jury instruction on a lesser-included offense. We affirm.

*Background Facts*

Erath County Deputy Taylor Tully, who was a 9-1-1 dispatcher at the time of the offense, testified that Janice Wood called 9-1-1 at around 9:30 p.m. on March 31, 2021, and told her that Appellant was yelling and "trying to bust through her door." Wood went into another room and told Deputy Tully that Appellant "was continuing to bust through doors to get to her." Deputy Tully testified that she heard Appellant enter the room Wood was in and "heard the phone, what appeared to [her], being broken, buttons pressed, [Wood] upset, [Appellant] yelling." Appellant can be heard yelling profanities on the 9-1-1 call recordings.

In a subsequent 9-1-1 call, Wood told Deputy Tully that Appellant pushed her onto the bed in the room, took the phone from her, and broke it. Wood told Deputy Tully that she was not injured. Appellant's mother called 9-1-1 and told Deputy Tully that Wood "fell back" on the bed.

Lieutenant Tye Box with the Erath County Sheriff's Office testified that he spoke with Wood shortly after the incident. Wood was "very upset" and "still shaking." Wood told Lieutenant Box that Appellant was yelling about his house and that she and Appellant's mother had locked themselves behind three doors. Wood said that Appellant kicked each door down, found the women in the bedroom, ripped the phone out of Wood's hand and broke it, and "threw her down on to the bed and was screaming . . . at his mom."

Photographs of the damaged doors were admitted into evidence, as well as a photograph of a broken phone. Lieutenant Box testified that Wood showed him the phone and told him that Appellant broke it. Lieutenant Box also testified that the

2

damage done to the three doors was consistent with someone forcing their way through a door by kicking it or "throwing your body into it."

Wood testified that Appellant's mother, who had been living with Wood, went outside to speak to Appellant on the night of the incident. Wood called 9-1-1 because she could hear Appellant yelling, and she was scared he would hurt his mother. Appellant's mother came into the house, locked the back door, the "kitchen door," and the bedroom that Wood was in. Wood said that Appellant "bust[ed] the doorframe[s]" in the kitchen and bedroom. Wood testified that Appellant then entered the bedroom and began screaming at her, forcing her to back up against the bed. Wood said that she sat down on the bed and then laid back on the bed while holding the phone. Wood testified that Appellant grabbed the phone from her hand, threw it, and then left. Wood testified that Appellant did not injure her and did not push her onto the bed.

Wood confirmed that she wrote a statement on the night of the incident stating that Appellant grabbed the phone out of her hand, "shoved [her] down on the bed," threw her phone, and broke it. Wood testified that she told the truth about what happened on the night of the incident, that she was telling the truth the "best [she] can remember" while testifying, and that her memory of the incident was likely better on the night it happened than it was at trial.

Appellant was sitting on a riding lawnmower outside Wood's house when responding officers arrived. Appellant was detained while officers completed their investigation. Appellant did not have any weapons with him. Deputy Jake Bolin, who worked for the Erath County Sheriff's Office at the time of the incident, testified that Appellant was "pretty mad" and told officers that his house was flooding.

Deputy Bolin went to Appellant's home to see whether any flooding "was actually happening." Deputy Bolin found a bathtub that had been "stopped up" with "pots and pans and all kinds of stuff" overflowing onto the bathroom floor. Deputy

Bolin was unable to turn the water off because "someone had ripped off the [faucet] knobs." Officers had to turn off the water main with pliers to get the water to stop flowing.

*Analysis*

*Sufficiency of the Evidence*

In his first issue, Appellant asserts that there was insufficient evidence to support the jury's verdict because "the State presented no evidence that when Appellant first crossed the threshold into Wood's house, he intended to cause physical contact with Wood or that Appellant knew Wood would regard the contact as offensive or provocative." Appellant's sufficiency challenge is limited to whether he had intent to commit assault at the time he broke into Wood's home.[1]

We review a sufficiency of the evidence issue under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rationa trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778

---

[1]Appellant concedes in his brief that he "broke through" locked doors and into Wood's home.

(Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, appellate courts are not permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Instead, appellate courts must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

We measure sufficiency of the evidence by the elements of the offense as defined in a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

As relevant to this case, a person commits a burglary if a person enters a habitation without the consent of the owner and with the intent to commit an assault. *See* PENAL § 30.02(a)(1). "[T]he gravamen of a burglary is the entry without the effective consent of the owner and with the requisite mental state." *Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006). "The offense is complete

5

once the unlawful entry is made, without regard to whether the intended [assault,] theft[,] or felony is also completed." *Id.* A person commits simple assault when the person: (1) "intentionally, knowingly, or recklessly causes bodily injury to another;" (2) "intentionally or knowingly threatens another with imminent bodily injury;" or (3) "intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative." PENAL § 22.01(a) (West Supp. 2023). Here, the trial court's charge restricted the manner and means of simple assault to that contained in Section 22.01(a)(3)—intentionally or knowingly causing physical contact with another when the person knows or reasonably should believe that the other will regard the contact as offensive or provocative. *See id.*

The factfinder may infer a defendant's intent by his conduct. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). Generally, intent is proven by circumstantial rather than direct evidence. *See, e.g.*, *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). Intent may be inferred by the acts, words, and conduct of the accused. *Id.* Further, the events of a burglary may imply the intent with which the burglar entered. *Caballero v. State*, 292 S.W.3d 152, 155 (Tex. App.—San Antonio 2009, pet. ref'd) (citing *Coleman v. State*, 832 S.W.2d 409, 413 (Tex. App.—Houston [1st Dist.] 1992, pet. ref'd)).

Appellant asserts that he "repeatedly made his intent known" when he "burst into Wood's home shouting his house was flooding and he needed help." Appellant further asserts that the State presented no evidence to rebut Appellant's contention that he forcefully entered Wood's home in order to get help because the State did not show that Appellant had any animosity toward Wood, or that he wanted to offend or provoke Wood by touching her. The State responds that "[b]reaking through three locked doors and immediately assaulting the person you claim you seek help from"

6

allowed the jury to "reject the notion that Appellant did not intend to cause harm to the victim at the time of entry."

Appellant additionally asserts that he did not possess a weapon "showing his intent to commit the secondary offense of assault." We note that possession of a weapon is not a required element of assault. *See* PENAL § 22.01. Thus, while possession of a weapon might have been an indication that Appellant intended to commit assault, the fact that he was not in possession of a weapon does not preclude a finding that he intended to commit assault at the time of entry.

There is ample circumstantial evidence that supports the jury's finding that Appellant intended to commit assault when he entered Wood's residence. The State presented Wood's testimony that (1) Appellant arrived at Wood's house and began yelling at his mother; (2) Appellant's mother came inside the house and locked three doors; (3) Appellant broke through all three locked doors; (4) Wood called 9-1-1 because she was afraid Appellant would hurt his mother; (5) Appellant entered the bedroom Wood and his mother were in; and (6) Appellant grabbed Wood's phone, threw it, and broke it. The State also presented officers' testimony that Wood said Appellant pushed her onto the bed after he entered the bedroom. Further, the State presented a 9-1-1 call that captured Appellant entering the room Wood and his mother were in, Appellant screaming profanities, and the sound of Wood's phone breaking. Finally, the State presented a photograph of Wood's broken phone.

Reviewing courts are required to consider the combined force of all the evidence. *Merritt v. State*, 368 S.W.3d 516, 526 (Tex. Crim. App. 2012) (citing *Smith v. State*, 332 S.W.3d 425, 442 (Tex. Crim. App. 2011)). Viewed in the light most favorable to the verdict, we conclude that there is sufficient evidence from which a rational trier of fact could have concluded beyond a reasonable doubt that Appellant committed burglary with intent to commit assault. *See Jackson*, 443 U.S. at 319. We overrule Appellant's first issue.

*Claim of Ineffective Assistance of Counsel*

In Appellant's second issue, he asserts that his trial counsel was ineffective for failing to request a charge for criminal trespass which he contends is a lesser-included offense of burglary. To establish that trial counsel rendered ineffective assistance at trial, Appellant must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result would have been different but for counsel's errors. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)). A reasonable probability is a probability sufficient to undermine confidence in the outcome of trial. *Strickland*, 466 U.S. at 694. There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and that the defendant must overcome the presumption that the challenged action could be considered sound trial strategy. *Id.* at 689.

A claim of ineffective assistance of counsel "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Thompson*, 9 S.W.3d at 814 (quoting *McFarland v. State*, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996)). Direct appeal is usually an inadequate vehicle to raise such a claim because the record is generally undeveloped. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005). Direct appeal is especially inadequate when counsel's strategy does not appear in the record. *Id.* Trial counsel should ordinarily have an opportunity to explain his actions before an appellate court denounces counsel's actions as ineffective. *Id.* Without this opportunity, an appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim App. 2001)).

Here, while Appellant filed a motion for new trial upon which the trial court conducted a hearing, the motion did not address his claim that trial counsel was

ineffective for failing to request a charge on a lesser-included offense. Accordingly, trial counsel has not had an opportunity to explain his reasoning for not requesting a charge on a lesser included offense. Any situation in which the evidence at trial entitles the defendant to a lesser-included offense instruction presents the defendant with the strategic choice between seeking an acquittal or a guilty verdict on the lesser-included offense. *See Tolbert v. State*, 306 S.W.3d 776, 780 (Tex. Crim. App. 2010). The defense may reasonably choose an all-or-nothing trial strategy, in which it seeks a verdict of acquittal. *See id.* at 781–82. Because an "all-or-nothing" approach represents a valid trial strategy, defense counsel generally cannot be ineffective for failing to request a jury instruction on a lesser-included offense. *See Grey v. State*, 298 S.W.3d 644, 655 (Tex. Crim. App. 2009) (Cochran, J., concurring) (observing that because all-or-nothing defense is a valid strategic option, "defense counsel is not ineffective for declining to request a lesser-included-offense instruction").

To establish a claim of ineffective assistance of counsel for failing to request a lesser-included offense, an appellant must demonstrate he was entitled to the lesser-included offense. *Cardenas v. State*, 30 S.W.3d 384, 392–93 (Tex. Crim. App. 2000). In *State v. Meru*, the Court of Criminal Appeals held that criminal trespass generally is not a lesser-included offense of burglary:

> The definition of "entry" in Section 30.05(b) makes the showing of only a partial entry by the defendant insufficient for a conviction of criminal trespass. This same partial entry, however, is all that is needed to support a burglary conviction. In other words, a burglary can be complete upon only a partial intrusion onto the property, whereas the lesser offense would require a greater intrusion. . . . Because criminal trespass requires proof of greater intrusion than burglary, the divergent definitions of "entry" will generally prohibit criminal trespass from being a lesser-included offense of burglary.

9

*State v. Meru*, 414 S.W.3d 159, 163–64 (Tex. Crim. App. 2013). The Court noted that criminal trespass could be a lesser-included offense of burglary "if the indictment alleges facts that include the full-body entry into the habitation by the defendant." *Id.* at 164. Thus, where, as here, the indictment alleges only that the defendant entered a habitation without specifying full-body entry, an instruction on criminal trespass is prohibited. *Id.* at 164 n.3; *see Weed v. State*, No. 05-21-00430-CR, 2022 WL 3593137, at *4 (Tex. App.—Dallas Aug. 23, 2022, no pet.) (mem. op., not designated for publication).

Here, the indictment alleged that Appellant "did then and there, with intent to commit assault, enter a habitation, without the effective consent of Janice Wood, the owner thereof." Thus, the indictment did not allege facts to warrant a lesser-included offense instruction on criminal trespass. *See Meru*, 414 S.W.3d at 164. Accordingly, Appellant's trial counsel's performance did not fall below an objective standard of reasonableness when he did not request an instruction on the offense of criminal trespass because Appellant was not entitled to the instruction. *See Cardenas*, 30 S.W.3d at 392–93; *see also Thompson*, 9 S.W.3d at 812. We overrule Appellant's second issue.

### This Court's Ruling

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


July 25, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.