

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-23-00370-CR

**GABRIEL SANCHEZ,**

                              **Appellant**

 v.

**THE STATE OF TEXAS,**

                              **Appellee**

_____

### From the 361st District Court
### Brazos County, Texas
### Trial Court No. 20-02104-CRF-361

_____

## MEMORANDUM OPINION

_____

A jury found Appellant, Gabriel Anthony Sanchez, guilty of the First-Degree Felony offense of injury to a child causing serious bodily injury. The jury found Sanchez used or exhibited a deadly weapon in the commission of the offense and assessed its punishment at forty years' confinement in the Institutional Division of the Texas Department of Criminal Justice. The trial court sentenced him accordingly. This appeal ensued. We affirm.

BACKGROUND

On March 31, 2020, Jessica Rodriguez received a call at work from her boyfriend, the appellant, Gabriel Sanchez. Sanchez informed her that their 37-day-old newborn, A.S., had fallen off the bed. Rodriguez left work and took A.S. to St. Joseph's Hospital.

Dr. Michael McDonald treated A.S. at St. Joseph's and initially observed the following injuries to A.S.: bruising on the face, around the eyes, on top of the head, on the lower back, on the buttocks, and on the genitalia. Dr. McDonald also observed bleeding from A.S.'s nostrils. Dr. McDonald had concerns of child abuse, so he contacted law enforcement. Additionally, Dr. McDonald ordered CT scans which indicated two skull fractures and brain bleeding. Dr. McDonald also noticed a hand-shaped bruise beginning to form on A.S.'s side. Dr. McDonald determined that A.S. would be life flighted to Texas Children's Hospital (TCH) in Houston because the facility was better equipped to handle the critical nature of A.S.'s injuries.

Before A.S. was life flighted to TCH, Detective Brandon Suehs was called to St. Joseph's to begin an investigation. After observing A.S.'s injuries, questioning Rodriguez, and interviewing hospital staff, Detective Suehs went to Rodriguez's apartment to contact Sanchez. Detective Suehs found Sanchez in a field near the apartment. Sanchez eventually admitted to striking A.S. on her side, buttocks, and face,

as well as demonstrated that he threw the child onto the bed with enough force that she bounced and hit her head on the nightstand. Detective Suehs then arrested Sanchez.

Dr. Sarpong treated A.S. at TCH. He concluded that A.S.'s injuries were intentionally inflicted. A.S. was released from TCH five days later.

Sanchez was charged with injury to a child with the intent to cause serious bodily injury.

AUTHORITY

Sanchez challenges the sufficiency of the evidence. The Court of Criminal Appeals has defined our standard of review of a sufficiency issue as follows:

> When addressing a challenge to the sufficiency of the evidence, we consider whether, after viewing all of the evidence in the light most favorable to the verdict, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017). This standard requires the appellate court to defer "to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. We may not re-weigh the evidence or substitute our judgment for that of the factfinder. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). The court conducting a sufficiency review must not engage in a "divide and conquer" strategy but must consider the cumulative force of all the evidence. *Villa*, 514 S.W.3d at 232. Although juries may not speculate about the meaning of facts or evidence, juries are permitted to draw any reasonable inferences from the facts so long as each inference is supported by the evidence presented at trial. *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 319); *see also Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007). We presume that the factfinder resolved any conflicting inferences from the evidence in favor of the verdict, and we defer to that resolution. *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). This is because the jurors are the

exclusive judges of the facts, the credibility of the witnesses, and the weight to be given to the testimony. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010). Direct evidence and circumstantial evidence are equally probative, and circumstantial evidence alone may be sufficient to uphold a conviction so long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Ramsey v. State*, 473 S.W.3d 805, 809 (Tex. Crim. App. 2015); *Hooper*, 214 S.W.3d at 13.

We measure whether the evidence presented at trial was sufficient to support a conviction by comparing it to "the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*; *see also Daugherty v. State*, 387 S.W.3d 654, 665 (Tex. Crim. App. 2013). The "law as authorized by the indictment" includes the statutory elements of the offense and those elements as modified by the indictment. *Daugherty*, 387 S.W.3d at 665.

*Zuniga v. State*, 551 S.W.3d 729, 732–33 (Tex. Crim. App. 2018).

A person commits the offense of injury to a child if, by act or omission, he intentionally, knowingly, recklessly, or with criminal negligence, causes a child: (1) serious bodily injury; (2) serious mental deficiency, impairment, or injury; or (3) bodily injury. TEX. PEN. CODE ANN. § 22.04(a)(1). "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ. *Id.* § 1.07(a)(46). "Bodily injury" means physical pain, illness or any impairment of physical condition. *Id.* § 1.07(a)(8).

A person acts intentionally with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result. *Id.* § 6.03(a). A person acts knowingly, with respect to a result of his conduct when he is aware that his conduct is reasonably certain to cause the result. *Id.* § 6.03(b). Injury to a child is a result-of-conduct offense, meaning the gravamen of the offense does not rest on the conduct itself. *Stuhler v. State*, 218 S.W.3d 706, 718 (Tex. Crim. App. 2007). Rather, the offense focuses on the resulting injury the conduct caused. *Id.*

DISCUSSION

In his sole issue, Sanchez challenges the sufficiency of the evidence. Sanchez bases his sufficiency challenge on two issues: 1) whether his conduct resulted in serious bodily injury and 2) if his conduct was intentional or knowing with respect to A.S.'s brain injury.

Sanchez first argues that the State failed to show sufficient evidence to establish serious bodily injury. Sanchez explains the State failed to show that A.S.'s injuries created "a substantial risk of death" or caused "death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." Sanchez relies on the fact that A.S. was walking, talking, and learning numbers at the time of trial. Sanchez also relies on testimony from Dr. Sarpong that A.S. was at a neurological baseline a month after being released from the hospital.

However, Dr. McDonald testified that at the time of A.S.'s injuries, the child presented a substantial risk of death. Dr. McDonald's belief in A.S.'s critical condition was significant enough that he relied on a life flight to get the child to a better equipped facility. Additionally, Dr. Sarpong testified that without treatment, A.S. would have died.

Dr. McDonald testified regarding the nature of A.S.'s injuries when the child arrived at St. Joseph's Hospital. Dr. McDonald primarily focused on A.S.'s two skull fractures and brain bleeding. *See Fancher v. State*, 659 S.W.2d 836, 837-38 (Tex. Crim. App. 1983) (resulting skull fracture and laceration above the eye after an 8-year was struck in the head with a rock constituted sufficient evidence of serious bodily injury); *See also Saunders v. State*, 913 S.W.2d 564, 568-69, 574 (child's skull fractures serious bodily injury via their substantial risk of death while determining whether the jury had been properly instructed regarding involuntary manslaughter). Dr. McDonald also administered Keppra, an anti-seizure medicine, as a prophylactic due to concern that A.S.'s brain bleeding would lead to a fatal seizure. Additionally, Dr. McDonald ordered A.S.'s life flight to Texas Children's Hospital. Dr. McDonald explained the two reasons to use life flight are 1) when time is a factor or 2) when someone has potentially critical injuries that may require critical interventions or complicated care. He concluded both reasons justified A.S.'s life flight. Dr. McDonald believed A.S. had a substantial risk of death in her initial condition.

Dr. Sarpong, the treating doctor at Texas Children's Hospital, also testified. He also observed a skull fracture on A.S.'s parietal bone and brain bleeding, as well as a contusion on A.S.'s brain. Dr. Sarpong explained that a skull fracture takes roughly eight weeks to six months to fully heal. Dr. Sarpong also testified that twenty-five percent of babies with A.S.'s head injuries die, and fifty percent develop lifelong complications. Additionally, Dr. Sarpong testified that if A.S. had not been treated, she would have died. *See Stuhler v. State*, 218 S.W.3d 706, 715 (Tex. Crim. App. 2007) (in making the determination whether an injury caused a substantial risk of death, courts should look to the degree of injury as it was inflicted, not after the effects have been ameliorated or exacerbated by medical treatment). Finally, Dr. Sarpong stated that A.S.'s initial stay lasted five days because CPS told Texas Children's Hospital not to let A.S. go yet. Sanchez points out that without the instruction, A.S. would have most likely been discharged after four days. *See id.*

Sanchez next argues that the State failed to show sufficient evidence to establish the required mental states of intentional or knowing. Sanchez points out that since injury to a child is a result of the conduct offense, the State must prove the defendant's culpable mental state as to the result of his conduct. A person acts intentionally with respect to the result of his conduct when it is her conscious objective or desire to cause the result. A person acts knowingly with respect to the result of his conduct when he is aware that her conduct is reasonably likely to cause a result. However, the result

regarding both intentional and knowing acts does not require the State to prove the actor intended or foresaw the specific injury. *See Haggins v. State*, 785 S.W.2d 827, 828 (Tex. Crim. App. 1990) (injury to a child requires the defendant has a required state of mind which contemplates serious bodily injury, not the specific injury).

Detective Suehs testified that he found Sanchez in a field near the Appellant's apartment while A.S. was in the hospital. Detective Suehs testified that Sanchez admitted to intentionally striking A.S. with his hand and throwing her with enough force against the bed that she bounced, struck the nightstand, and hit the floor. Additionally, Sanchez admitted to striking A.S. various times which accounted for the hand-shaped bruise on A.S.'s side, the bruising on her lower back, and the bruising on her face. *See Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995) (intent can be inferred from the acts, words, and conduct of the accused).

Dr. Sarpong testified that it is harder to fracture a baby's skull than an adult's. More force is required to fracture a baby's skull. Additionally, Dr. Sarpong stated that the bruising indicated intentional injury because of its various locations, which included A.S.'s face, back, buttocks, thighs, and labia. The bruising also primarily occurred on soft tissue, which made it an unlikely result of accidently bumping into objects. *See Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002) (intent or knowledge can be inferred from evidence, including the method of committing the crime, and the nature of the wounds). Dr. Sarpong testified that A.S.'s brain bleeding was consistent with violent

shaking. Dr. Sarpong also stated that the brain bleeding was unlikely the result of birth trauma since hemosiderin, an indicator of bleeding related to birth, was not present.

Sergeant Zane Peterson, the custodian of records at Brazos County Jail, testified that Sanchez called Rodriguez from the booking office. The call was recorded and presented to the jury. During the call, Rodriguez stated "Anthony, you… you did this." To which Sanchez responded, "I know Jessica. That's why I'm scared. I'm a monster."

Considering all of the foregoing evidence viewed in the light most favorable to the verdict, we conclude that the jury could have rationally found beyond a reasonable doubt that Sanchez intentionally or knowingly caused A.S. serious bodily injury. Therefore, the evidence was sufficient for the jury to have determined that Sanchez intentionally or knowingly caused A.S. serious bodily injury. Accordingly, we overrule Sanchez's sole issue.

## Conclusion

Having overruled Sanchez's sole issue, we affirm the trial court's judgment.

MATT JOHNSON
Chief Justice

Before Chief Justice Johnson,
    Justice Smith and
    Justice Davis[1]
Affirmed
Opinion delivered and filed January 23, 2025
Do not publish
[CR25]



---

[1] The Honorable Rex Davis, Senior Justice (Retired) of the Tenth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.